Nos. 24-1217 & 24-1223

# In the United States Court of Appeals for the Seventh Circuit

GRIFFITH FOODS INTERNATIONAL INC. f/k/a GRIFFITH LABORATORIES U.S.A., INC., AND GRIFFITH FOODS GROUP INC. f/k/a GRIFFITH LABORATORIES, INC.,

*Plaintiffs-Appellees*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellant*.

STERIGENICS, U.S., LLC,

*Plaintiff-Appellee*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of Illinois
Case Nos. 1:21-cv-4581, 1:21-cv-6403

**OPENING BRIEF OF APPELLANT NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.**

Thomas H. Dupree Jr.
Nick Harper
Aaron Hauptman
Aly Cox
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500
tdupree@gibsondunn.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 24-1217; 24-1223

Short Caption: Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co.; Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

National Union Fire Insurance Company of Pittsburgh, Pa.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP; Nicolaides Fink Thorpe Michaelides Sullivan LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)      Identify all its parent corporations, if any; and

         See attached

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

         See attached

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Thomas H. Dupree Jr.      Date: 04/19/2024

Attorney's Printed Name: Thomas H. Dupree Jr.

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑   No ☐

Address: 1050 Connecticut Ave NW, Washington, DC 20036

Phone Number: 202.955.8500      Fax Number: 202.467.0539

E-Mail Address: tdupree@gibsondunn.com

rev. 12/19 AK

# RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, Pa. hereby discloses that it is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1217; 24-1223

Short Caption: Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co.; Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    National Union Fire Insurance Company of Pittsburgh, Pa.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Nicolaides Fink Thorpe Michaelides Sullivan LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Nick Harper      Date: 04/19/2024

Attorney's Printed Name: Nick Harper

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).      Yes ☐    No ☑

Address: 1050 Connecticut Ave NW, Washington, DC 20036

Phone Number: 202.955.8500      Fax Number: 202.467.0539

E-Mail Address: nharper@gibsondunn.com

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, Pa. hereby discloses that it is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1217; 24-1223

Short Caption: Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co.; Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    National Union Fire Insurance Company of Pittsburgh, Pa.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Gibson, Dunn & Crutcher LLP; Nicolaides Fink Thorpe Michaelides Sullivan LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        See attached

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        See attached

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Aaron Hauptman      Date: 04/19/2024

Attorney's Printed Name: Aaron Hauptman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1050 Connecticut Ave NW, Washington, DC 20036

Phone Number: 202.955.8500      Fax Number: 202.467.0539

E-Mail Address: ahauptman@gibsondunn.com

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, Pa. hereby discloses that it is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc.

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-1217; 24-1223

Short Caption: Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co.; Sterigenics, U.S., LLC v. Nat'l Union Fire Ins. Co.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

National Union Fire Insurance Company of Pittsburgh, Pa.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Gibson, Dunn & Crutcher LLP; Nicolaides Fink Thorpe Michaelides Sullivan LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

See attached

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

See attached

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Alyson M Cox    Date: 04/19/2024

Attorney's Printed Name: Alyson M Cox

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1050 Connecticut Ave NW, Washington, DC 20036

Phone Number: 202.955.8500    Fax Number: 202.467.0539

E-Mail Address: acox@gibsondunn.com

rev. 12/19 AK

## RULE 26.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, Pa. hereby discloses that it is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc.

# TABLE OF CONTENTS

INTRODUCTION .................................................................. 1

JURISDICTIONAL STATEMENT ...................................... 4

STATEMENT OF THE ISSUES ............................................ 6

STATEMENT OF THE CASE ................................................ 7

    A.    National Union And Griffith Agree To Insurance
    Policies With Pollution Exclusions. ........................................ 7

    B.    Griffith And Sterigenics Face Hundreds Of
    Lawsuits For Allegedly Emitting A Known
    Carcinogen For Decades ........................................................... 8

    C.    Griffith And Sterigenics Sue National Union
    Seeking Declarations That National Union Has A
    Duty To Defend. .................................................................... 11

    D.    The District Court Holds That National Union
    Has A Duty To Defend. ......................................................... 13

    E.    Griffith And Sterigenics Pursue Parallel
    Coverage Litigation In State Court. ...................................... 16

    F.    The District Court Declines To Dismiss The Case
    And Enters Judgment. ........................................................... 18

SUMMARY OF ARGUMENT ............................................ 19

STANDARD OF REVIEW .................................................. 24

ARGUMENT ..................................................................... 25

    I.    This Case Must Be Dismissed For Failure To Join
    Griffith's And Sterigenics' Other Insurers. ......................... 25

# TABLE OF CONTENTS

A. Rule 19 Requires Dismissal When There Is A Parallel And More Comprehensive Insurance Action In State Court. ................................. 25

B. This Case Must Be Dismissed In Favor Of A Comprehensive State-Court Resolution. ...................... 30

II. The District Court's Duty-To-Defend Ruling Is Deeply Flawed. ........................................................ 37

A. The District Court Erred In Requiring National Union To Defend Hundreds Of Lawsuits That Its Policies Indisputably Do Not Cover ..................................................................... 38

B. The District Court Must Resolve Whether Sterigenics Is Insured Before Requiring National Union To Defend. .......................................... 42

1. There Are Disputes Of Material Fact About Whether Sterigenics Is An Insured Party. ..................................................... 42

2. The District Court Erred In Holding That The Fact Disputes Are Irrelevant. ......................................................... 45

C. The District Court Erred In Finding A Duty To Defend Despite The Pollution Exclusion. ............... 51

1. The Pollution Exclusion Applies To Decades-Long, Deliberate Emissions Of A Known Pollutant ...................................... 51

2. The Master Complaint Alleges Only "Bodily Injury," Not "Personal Injury." .............. 61

ii

# TABLE OF CONTENTS

D.   If The Court Has Any Doubt, It Should
     Certify These Questions To The Illinois
     Supreme Court. .......................................................... 66

III.  The District Court Erred By Rubber Stamping
     Sterigenics' Requests For Massive Damages. ...................... 67

CONCLUSION .......................................................................... 73

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Am. Motorists Ins. Co. v. Stewart Warner Corp.*,
2004 WL 1444889 (N.D. Ill. June 25, 2004) ...................................... 56

*Am. States Ins. Co. v. Koloms*,
687 N.E.2d 72 (Ill. 1997) ........................................... 22, 51, 52, 53, 55

*Am. Alt. Ins. Corp. v. Metro Paramedic Servs., Inc.*,
829 F.3d 509 (7th Cir. 2016) ............................................... 47

*Amerisure Mut. Ins. Co. v. Microplastics, Inc.*,
622 F.3d 806 (7th Cir. 2010) .................................................. 50, 51, 65

*Askew v. Sheriff of Cook Cnty.*,
568 F.3d 632 (7th Cir. 2009) ....................................................... 24, 25

*Bearden v. Conagra Foods, Inc.*,
2021 WL 6144061 (Ill. App. Ct. Dec. 30, 2021) .................................. 39

*Bernstein v. Hall*,
2013 WL 3377454 (Ill. App. Ct. June 28, 2013) ................................. 39

*Bituminous Cas. Corp. v. Fulkerson*,
571 N.E.2d 256 (Ill. App. Ct. 1991) ..................................... 49

*Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*,
497 F. App'x 313 (4th Cir. 2012) .......................................... 35

*Carney v. Vill. of Darien*,
60 F.3d 1273 (7th Cir. 1995) .............................................. 66

*In re Chi. Flood Litig.*,
680 N.E.2d 265 (Ill. 1997) ................................................... 62

*Collins Eng'rs, Inc. v. Travelers Prop. Cas. Co. of Am.*,
449 F. Supp. 3d 778 (N.D. Ill. 2020) .................................... 40

**Page(s)**

*Cothron v. White Castle Sys., Inc.*,
20 F.4th 1156 (7th Cir. 2021) ............................................. 67

*Country Mut. Ins. Co. v. Bible Pork, Inc.*,
42 N.E.3d 958 (Ill. App. Ct. 2015) ...................................... 53

*Dowe v. Birmingham Steel Corp.*,
963 N.E.2d 344 (Ill. App. Ct. 2011) .................................... 39

*Erie Ins. Exch. v. Aral Constr. Corp.*,
225 N.E.3d 41 (Ill. App. Ct. 2022) ...................................... 46

*Erie Ins. Exch. v. Imperial Marble Corp.*,
957 N.E.2d 1214 (Ill. App. Ct. 2011) ................................... 53

*Evergreen Park Nursing & Convalescent Home, Inc. v. Am.
Equitable Assurance Co.*,
417 F.2d 1113 (7th Cir. 1969)..................................... 19, 27, 28, 30, 36

*Farmers Auto. Ins. Ass'n v. Neumann*,
28 N.E.3d 830 (Ill. App. Ct. 2015) ...................................... 40

*Fed. Ins. Co. v. 3M Co.*,
642 F. Supp. 3d 882 (D. Minn. 2022)................................... 40

*Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*,
983 F.3d 307 (7th Cir. 2020).............................................. 42

*Fruit of the Loom, Inc. v. Travelers Indem. Co.*,
672 N.E.2d 278 (Ill. App. Ct. 1996) ......................... 23, 56, 58, 59, 60

*Gen. Ins. Co. of Am. v. Clark Mall, Corp.*,
631 F. Supp. 2d 968 (N.D. Ill. 2009)............................... 46, 47

*Green Plains Trade Grp., LLC v. Archer Daniels
Midland Co.*,
90 F.4th 919 (7th Cir. 2024) .............................................. 55

*H.A.L. NY Holdings, LLC v. Guinan,*
  958 F.3d 627 (7th Cir. 2020)............................................55

*Ill. Brick Co. v. Illinois,*
  431 U.S. 720 (1977)..........................................................25

*Indem. Ins. Co. of N. Am. v. Westfield Ins. Co.,*
  58 F.4th 276 (7th Cir. 2023) ............................................32

*Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau,*
  470 F. Supp. 2d 873 (C.D. Ill. 2007) ................................56

*Kim v. State Farm Fire & Cas. Co.,*
  728 N.E.2d 530 (Ill. App. Ct. 2000) ...........................52, 56

*Knoll Pharm. Co. v. Auto. Ins. Co.,*
  167 F. Supp. 2d 1004 (N.D. Ill. 2001)...................44, 50, 51

*L.A. Connection v. Penn-Am. Ins. Co.,*
  843 N.E.2d 427 (Ill. App. Ct. 2006) ................................49

*Landmark Am. Ins. Co. v. Hilger,*
  838 F.3d 821 (7th Cir. 2016).......................................48, 49

*Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,*
  655 N.E.2d 842 (Ill. 1995)................................................38

*Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.,*
  938 F.2d 1423 (1st Cir. 1991) ...............................57, 58, 59

*Medmarc Cas. Ins. Co. v. Avent Am., Inc.,*
  612 F.3d 607 (7th Cir. 2010).............................................24

*Mesa Lab'ys, Inc. v. Fed. Ins. Co.,*
  994 F.3d 865 (7th Cir. 2021).............................................52

*Metavante Corp. v. Emigrant Sav. Bank,*
  619 F.3d 748 (7th Cir. 2010).............................................72

**Page(s)**

*Millers Mut. Ins. Ass'n of Illinois v. Graham Oil Co.*,
 668 N.E.2d 223 (Ill. App. Ct. 1996) .................................... 64

*Moore v. Ashland Oil, Inc.*,
 901 F.2d 1445 (7th Cir. 1990) ........................................... 25

*Nat'l Fire & Cas. Co. v. W. By & Through Norris*,
 107 F.3d 531 (7th Cir. 1997) ............................................. 66

*Northfield Ins. Co. v. City of Waukegan*,
 701 F.3d 1124 (7th Cir. 2012) ...................................... 38, 42

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*,
 607 N.E.2d 1204 (Ill. 1992) ......................................... 56, 60

*Pekin Ins. Co. v. Wilson*,
 930 N.E.2d 1011 (Ill. 2010) .............................................. 48

*Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*,
 976 F.2d 1037 (7th Cir. 1992) ........................................... 61

*Provident Tradesmens Bank & Tr. Co. v. Patterson*,
 390 U.S. 102 (1968) .................................................. 28, 32

*Ray Indus., Inc. v. Liberty Mut. Ins. Co.*,
 974 F.2d 754 (6th Cir. 1992) ............................................ 58

*Reiser v. Residential Funding Corp.*,
 380 F.3d 1027 (7th Cir. 2004) ........................................... 55

*Rhone–Poulenc Inc. v. Int'l Ins. Co.*,
 71 F.3d 1299 (7th Cir. 1995) ............................................ 36

*Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*,
 611 F.3d 339 (7th Cir. 2010) ............................................ 62

*Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*,
 36 F.3d 1274 (4th Cir. 1994) ........................................ 31, 33

**Page(s)**

*Scottsdale Indem. Co. v. Vill. of Crestwood,*
673 F.3d 715 (7th Cir. 2012) ............................................. 22, 54, 55, 56

*Sentinel Ins. Co. v. Walsh Constr. Co.,*
298 F. Supp. 3d 1165 (N.D. Ill. 2018) ................................ 49

*Sta-Rite Indus., Inc. v. Allstate Ins. Co.,*
96 F.3d 281 (7th Cir. 1996) ........... 19, 27, 28, 29, 30, 31, 33, 35, 36, 37

*State Auto Prop. & Cas. Ins. Co. v. Bell & Arthur
Condo. Ass'n,*
454 F. Supp. 3d 792 (N.D. Ill. 2020) .................................. 42

*Taco Bell Corp. v. Continental Cas. Co.,*
388 F.3d 1069 (7th Cir. 2004) ............................................ 68

*Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.,*
2021 WL 1962403 (N.D. Ill. May 17, 2021) ....................... 36

*USA Gymnastics v. Liberty Ins. Underwriters, Inc.,*
46 F.4th 571 (7th Cir. 2022) ............................................. 25, 68, 69, 72

*Whetsel v. Network Prop. Servs., LLC,*
246 F.3d 897 (7th Cir. 2001) .............................................. 36

*Zurich Am. Ins. Co. v. Sterigenics U.S., LLC,*
No. 23C-02-232 (Del. Super. Court May 19, 2023) ............. 32

*Zurich Ins. Co. v. Raymark Indus., Inc.,*
514 N.E.2d 150 (Ill. 1987) ................................................. 45

**Statutes and Rules**

415 Ill. Comp. Stat. Ann. 5/9(a) ....................................... 66

7th Cir. R. 52(a) ................................................................ 67

Fed. R. Civ. P. 19 ........................................... 26, 28, 29, 31, 33, 34, 37

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Other Authorities**

1 Allan D. Windt, *Insurance Claims and Disputes*
§ 4:5 (6th ed.)..........................................................................46

# REQUEST FOR ORAL ARGUMENT

Defendant-Appellant National Union Fire Insurance Company of Pittsburgh, Pa. requests oral argument under Federal Rule of Appellate Procedure 34(a) and Seventh Circuit Rule 34(f). This is a consolidated appeal from two judgments totaling more than $100 million. The appeal raises important questions about Federal Rule of Civil Procedure 19 and the duty to defend under Illinois law. Oral argument would aid the Court in resolving this appeal.

## INTRODUCTION

This is an insurance dispute between National Union (the insurer and appellant) and Griffith and Sterigenics—companies alleged to have deliberately emitted a known toxic pollutant into the air for more than 35 years.

Since 2018, individuals who lived, worked, or attended school in Willowbrook, Illinois have filed more than 800 lawsuits against Griffith and Sterigenics in Illinois state court (the "Underlying Lawsuits"). They claim that Griffith (from 1984 to 1999) and Sterigenics (from 1999 to 2019) operated a facility in Willowbrook where they used Ethylene Oxide, a known carcinogen and pollutant, to sterilize medical equipment. The Underlying Lawsuits allege that as part of the regular operation of that facility, Griffith and Sterigenics emitted vast amounts of Ethylene Oxide into the air, causing illness and death.

During the 35 years in which Griffith and Sterigenics allegedly were emitting Ethylene Oxide, they purchased general commercial liability insurance policies from many different insurers. National Union issued two such policies to Griffith and none to Sterigenics. National Union's policies were in force for just over one of the 35 years of alleged

emissions (July 1984 to September 1985), and therefore do not cover hundreds of the Underlying Lawsuits, most of which allege injuries that occurred years after the policies expired.

Nevertheless, Griffith and Sterigenics chose to sue only National Union in federal court, seeking to impose on National Union a duty to defend *all* of the Underlying Lawsuits. Only later did they pursue comprehensive litigation against their other insurers in a parallel, ongoing state-court action, in which National Union was later impleaded.

Griffith's and Sterigenics' lawsuits against National Union were separate from one another but proceeded in tandem in the district court. The district court held that National Union has a duty to defend Griffith and Sterigenics in the Underlying Lawsuits and awarded them approximately $124 million in costs that they claim to have incurred defending the Underlying Lawsuits, plus $9 million in interest. The two cases have been consolidated on appeal. This Court should reverse because the district court's rulings suffer from multiple, independent legal errors.

For starters, Federal Rule of Civil Procedure 19 requires dismissal of a federal action for insurance coverage where, as here, all of the insurers cannot be joined in the federal action and there is a more

comprehensive, parallel action in state court. Dismissal of the federal action avoids duplicative litigation and inconsistent judgments, and allows state courts to definitively resolve state-law issues. Absent dismissal here, contradictory duty-to-defend rulings by federal and state courts could preclude National Union from seeking contribution from the other insurers. And in that event, National Union would have to foot the entire $124 million defense bill despite having issued policies covering approximately 1/35th of the relevant time period. That outcome is exactly what Rule 19 is designed to prevent, as this Court has repeatedly recognized.

On the merits, the district court fundamentally misconstrued the scope of National Union's duty to defend under Illinois law. The court erroneously determined National Union's duty to defend more than 800 separate lawsuits, including hundreds alleging no injuries during the single year in which National Union insured Griffith, based on the allegations in a "master complaint" intended only to manage discovery. It awarded Sterigenics $101 million in defense costs (plus interest) without allowing National Union discovery into disputed factual issues about whether Sterigenics is even insured under National Union's policies. And it decided that lawsuits based on decades-long emissions of a known

carcinogen did *not* allege traditional pollution harms (which are not covered under the policies), but *did* allege harms sounding in "wrongful entry or eviction or other invasion of the right of private occupancy." Each of these errors requires reversal, but as an alternative, if this Court is uncertain about the Illinois law questions presented, National Union respectfully suggests that it certify the questions to the Illinois Supreme Court.

The district court's damages award also was flawed. The court ordered National Union to pay 100% of Sterigenics' asserted $101 million in defense costs—nearly five times the amount claimed by Griffith for litigating the same cases—without giving National Union the required, meaningful opportunity to challenge the reasonableness of those costs, or, indeed, even whether they were incurred by Sterigenics or for these underlying suits at all. This Court should reverse.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship among the parties in each case and the amount in controversy exceeded $75,000. JA18, 629.

National Union is a citizen of Pennsylvania, its state of incorporation, and New York, its principal place of business. JA18.

Griffith Foods International Inc. is a citizen of Delaware, its state of incorporation, and Illinois, its principal place of business. Griffith Foods Group Inc. is a citizen of Illinois, its state of incorporation and principal place of business. JA628. This brief refers to both entities collectively as "Griffith."

Sterigenics, U.S., LLC is a citizen of Delaware and Ohio because its sole member, Sotera Health LLC, has only one member, Sotera Health Holdings LLC, which also has only one member, Sotera Health Company, a corporation incorporated in Delaware with its principal place of business in Ohio. JA18.

This Court has jurisdiction over these appeals under 28 U.S.C. § 1291. On January 11, 2024, the district court entered final judgments in both cases. RSA53-56. On February 9, 2024, National Union filed timely notices of appeal. JA612-13, 880-82.

## STATEMENT OF THE ISSUES

1.   Whether this case must be dismissed under Rule 19 to avoid the risk of inconsistent judgments and facilitate a comprehensive resolution in parallel state-court litigation.

2.   Whether National Union's duty to defend more than 800 separate lawsuits can be determined based on the allegations in a "master complaint" filed to jointly manage discovery.

3.   Whether, in a declaratory judgment action, Sterigenics' status as an insured party can be determined based entirely on the allegations in the master complaint.

4.   Whether the insurance policies' pollution exclusion applies to lawsuits alleging decades-long, intentional emissions of a known carcinogen.

5.   Whether the Underlying Lawsuits allege any personal injury based on wrongful entry or eviction or other invasion of the right of private occupancy.

6.   Whether the district court could assume the reasonableness of Sterigenics' $101 million in claimed defense costs.

**STATEMENT OF THE CASE**

**A.  National Union And Griffith Agree To Insurance Policies With Pollution Exclusions.**

In the 1980s, National Union issued Griffith two materially identical general commercial liability insurance policies.  Each was effective for one year between September 30, 1983 and September 30, 1985.  JA225, 250.  The policies require National Union to "defend any suit against the insured seeking damages on account of … bodily injury" or "personal injury."  JA230-31.  The policies define "bodily injury" as "bodily injury, sickness or disease sustained by any person which occurs during the policy period."  JA226.  The policies define "personal injury" as "injury arising out of" certain enumerated "offenses committed during the policy period," including the "wrongful entry or eviction or other invasion of the right of private occupancy."  JA231.

The policies also contain certain exclusions from coverage, including a pollution exclusion.  JA230.  That exclusion provides that "insurance does not apply" to "bodily injury … arising out of the discharge, dispersal, release or escape of … toxic chemicals, liquids or gases, … contaminants or pollutants into or upon land, the atmosphere or any water

course or body of water," unless "such discharge, dispersal, release or escape is sudden and accidental."  JA230.

The policies list Griffith as the "named insured"—the party that owns the policies and is responsible for making premium payments. JA264.  An endorsement to the policies further defines the term "named insured" to include Griffith's subsidiaries at the time the policies were executed, as well as "any other company which is acquired or formed by [Griffith] during the policy period," provided that certain conditions are satisfied.  JA264.  The policies also contain an anti-assignment clause providing that any assignment of the policy "shall not bind [National Union] until its consent is endorsed hereon."  JA252.

## B. Griffith And Sterigenics Face Hundreds Of Lawsuits For Allegedly Emitting A Known Carcinogen For Decades.

In September 2018, Susan Kamuda sued Sterigenics, alleging that its medical-device-sterilization facility in Willowbrook, Illinois, emitted Ethylene Oxide, an odorless and carcinogenic gas, for more than three decades, causing her to develop cancer.  Other plaintiffs who lived, worked, or attended school in Willowbrook filed related suits (collectively, the "Underlying Lawsuits").  JA19, 45.

In October 2019, an Illinois state court issued an order consolidating all the then-existing lawsuits and "future related cases" "for All Pretrial Purposes and Discovery-Related Matters." Order, *Kamuda v. Sterigenics U.S., LLC*, No. 2018-L-10475 (Ill. Cir. Ct. Oct. 15, 2019). As part of those procedures, the Illinois court required the plaintiffs to file a "Master Complaint" to be used "for discovery and pretrial only." JA646. That master complaint was then incorporated by reference into most underlying plaintiffs' individual complaints, which also included plaintiff-specific allegations, including the years they lived, worked, or went to school in Willowbrook and their medical conditions. *See, e.g.*, JA276-81. The second amended master complaint added Griffith as a defendant. JA644.

To National Union's knowledge, more than 800 separate lawsuits related to the Willowbrook facility have been brought against Griffith and Sterigenics to date. JA403-78. At least 508 of those suits have been brought by plaintiffs who allege that they were exposed to Ethylene Oxide only after National Union's policies expired in September 1985. *See* JA479-541.

In April 2021, the plaintiffs filed the fourth amended master complaint—the one which Griffith and Sterigenics claim entitle them to defense. JA39-157. It alleges that, in July 1984, Griffith received permission to construct and operate a medical-device-sterilization facility in a residential area in Willowbrook. JA62. The facility allegedly sterilized equipment using Ethylene Oxide. JA53. The master complaint alleges that Griffith and its subsidiary initially operated the facility jointly, but that Griffith sold the subsidiary in 1999. JA66-67. It alleges that Sterigenics assumed the liabilities of Griffith's subsidiary through "a series of acquisitions, mergers, and name changes." JA46-47. Sterigenics allegedly continued operating the facility until its closure in 2019. JA88, 111.

The gravamen of the Underlying Lawsuits is that, in operating the Willowbrook facility over decades, Griffith and Sterigenics intentionally emitted large quantities of Ethylene Oxide into the air, causing disease and death among people who lived, worked, or attended school in Willowbrook. JA86-90. The lawsuits seek damages under various tort theories, including willful and wanton conduct, negligence, negligent supervision, and public nuisance. JA111-42.

Following discovery, the court heard motions regarding which cases should serve as bellwethers.  Susan Kamuda's was selected to go first, and in 2022 she won a $363 million jury verdict.  *See* JA286-88.  Later, a second plaintiff tried his case, which Griffith and Sterigenics won.  JA289-90.

In 2023, Griffith and Sterigenics settled most of the remaining Underlying Lawsuits for more than $400 million.  *See* JA324.

## C. Griffith And Sterigenics Sue National Union Seeking Declarations That National Union Has A Duty To Defend.

National Union's policies were in effect for approximately one of the 35 years during which the Willowbrook facility was operational.  Twelve different insurers issued policies to Griffith in the remaining 34 years.  JA294-96, 339-44.  Yet Griffith and Sterigenics initially sought a defense only from National Union.



JA81, 225, 250.

Although the Underlying Lawsuits had named Griffith as a defendant in mid-2020, Griffith did not request defense until January 2021. JA634. Sterigenics made the same request a month later. JA31.

Later in 2021, after National Union denied coverage, Griffith and Sterigenics sued National Union in the Northern District of Illinois. Griffith and Sterigenics sought declarations that National Union had a duty to defend the Underlying Lawsuits and to indemnify them for any liability incurred in the suits. JA31-33, 638-40. They also brought breach-of-contract claims under the policies. JA34-35, 637-38.

Before the parties engaged in any discovery, Griffith and Sterigenics moved for judgment on the pleadings on their duty-to-defend claims. RSA2. They argued that National Union had a duty to defend all of the Underlying Lawsuits based on the allegations in the fourth amended master complaint.

National Union cross-moved for judgment on the pleadings, arguing that because the allegations in the master complaint fall within the policies' pollution exclusion, National Union did not have a duty to defend any of the Underlying Lawsuits. *Sterigenics*, ECF 32. National Union reserved the right to seek discovery into whether Sterigenics is a "named

insured" under the policies, as well as into which of the underlying plaintiffs' alleged injuries occurred during National Union's policy periods. *Id.* at 5, 14 n.8.

### D. The District Court Holds That National Union Has A Duty To Defend.

In August 2022, the district court granted Griffith's and Sterigenics' motions and held that National Union has a duty to defend the Underlying Lawsuits. In conducting the duty-to-defend analysis, the district court applied the "eight corners rule." RSA8-9. That rule requires "a comparison between the four corners of the insurance policy and the four corners of the complaint for which defense is sought." RSA8-9. The "duty to defend arises where the 'allegations of the underlying complaint potentially assert a claim within the liability coverage of the policy.'" RSA9. The district court ascertained the relevant allegations by looking to the master complaint rather than the individual complaints filed by each of the underlying plaintiffs.

Applying the eight-corners rule, the district court first concluded that the master complaint's allegations about Sterigenics' corporate history raise "at least the 'possibility'" that Sterigenics is a "named insured" entitled to assert rights under the policies. RSA10-11. The court rejected

National Union's argument that "numerous fact issues" precluded judgment on the pleadings for Sterigenics.  RSA12.  According to the court, it did not matter whether Sterigenics "in fact" has rights under the policies; it was enough that the master complaint contained allegations to that effect.  RSA12.

The district court next concluded that the master complaint alleged "bodily injury" that fell outside the pollution exclusion.  The district court recognized that, under Illinois law, the pollution exclusion applies to "traditional environmental pollution" like emissions of Ethylene Oxide.  RSA14.  Yet the court reasoned that the pollution exclusion arguably does not apply here because Griffith and Sterigenics allegedly operated the Willowbrook facility pursuant to a permit from the Illinois Environmental Protection Agency ("IEPA").  RSA14-15.

In the alternative, and only as to Sterigenics, the district court determined that the pollution exclusion's "sudden and accidental" exception applies, rendering the exclusion inapplicable.  The court recognized that the master complaint primarily alleged "steady and continuous" Ethylene Oxide emissions "24 hours a day" for 35 years.  RSA17.  But the court decided that the sudden-and-accidental exception applies based on

two paragraphs in the master complaint alleging an unspecified number of "unintended leaks, spills, or emissions."  RSA17.

Finally, the district court concluded that the master complaint arguably alleges a "personal injury" not subject to the pollution exclusion. The policies define personal injury in relevant part as an injury arising out of "wrongful entry or eviction or other invasion of the right of private occupancy."  JA231.  Although the master complaint asserts no property-based claims or injuries, the district court reasoned that the facts alleged "'potentially give rise to' a private nuisance claim."  RSA20-22.  In particular, the court pointed to allegations that emissions of Ethylene Oxide "caused those who lived and worked in the area surrounding the facilities to inhale high levels of [Ethylene Oxide]."  RSA20 (quoting JA121).

Based on those determinations, the district court held that National Union owes Griffith and Sterigenics "a duty to defend the underlying fourth amended complaint."  RSA28.  The court's order did not award damages or resolve Griffith's and Sterigenics' indemnity or breach-of-contract claims.

Shortly thereafter, the court requested briefing on the remaining issues.  National Union again argued that it was entitled to discovery on

when each of the underlying plaintiffs alleged they were exposed to Ethylene Oxide. *Sterigenics*, ECF 46, at 2-3. National Union also contended that it was entitled to discovery as to the identity of Griffith's and Sterigenics' other insurers, so that it could implead them and seek contribution. *Id.* National Union contemporaneously moved to implead the one insurer it had been able to identify, as well as unidentified "Doe" insurers. *Sterigenics*, ECF 44.

## E. Griffith And Sterigenics Pursue Parallel Coverage Litigation In State Court.

Although Griffith initially sought defense from only National Union, in January 2023 it changed course and sued its 12 other insurers in Illinois state court. JA293. Griffith alleged that the other insurers issued policies covering the years after National Union's policies expired, and that those policies also require the insurers to defend Griffith in the Underlying Lawsuits. JA293-94. Two of those insurers impleaded National Union, and Sterigenics moved to intervene. JA569-70, 565. As of April 2024, the case remains at the pleading stage and discovery is in its infancy.

Soon after Griffith filed its state-court action, National Union moved to dismiss these federal-court cases for failure to join required

parties under Rule 19. *Sterigenics*, ECF 71. Griffith's choice to seek defense from its other insurers in state court threatened to impede National Union's ability to seek contribution, as did Sterigenics' decision to intervene. Because some of those other insurers were non-diverse from Griffith and Sterigenics, National Union sought Rule 19 dismissal in order to facilitate a comprehensive resolution in state court and avoid the possibility of inconsistent judgments. *Id.* Specifically, if the state court were to determine that the other insurers did not have a duty to defend, that could force National Union to bear the entire cost of defending the Underlying Lawsuits.

Griffith and Sterigenics opposed dismissal and requested around $92 million in damages for the amounts they claimed to have spent defending the Underlying Lawsuits through mid-2022. *Sterigenics*, ECF 69, 73; *Griffith*, ECF 59, 83. National Union objected to the asserted defense costs on the grounds that they were unreasonably high, that the bills were over-redacted, and that the costs included impermissible categories of expenses—including the expenses of Sotera (Sterigenics' parent and co-defendant) and expenses for Sterigenics' Ethylene-Oxide litigation in Georgia and New Mexico. *Sterigenics*, ECF 90, at 3-5, 13-14.

Griffith and Sterigenics also moved to voluntarily dismiss their remaining breach-of-contract and indemnity claims.  RSA42.

## F.  The District Court Declines To Dismiss The Case And Enters Judgment.

In July 2023, the district court resolved the remaining motions.  It denied National Union's motion to dismiss, holding that the other insurers were not required parties under Rule 19.  RSA38-41.  And it decided that Griffith and Sterigenics were entitled to the full amount of defense costs they claimed.  RSA46-49.  The court then dismissed Griffith's and Sterigenics' breach-of-contract and indemnity claims, per their requests.  RSA49-50.

National Union appealed.  But before doing so, Griffith and Sterigenics moved for additional defense costs and prejudgment interest.  Because the district court's judgments had neither "set out the declaratory relief awarded to plaintiffs a year earlier" nor "addressed plaintiffs' request for pre-judgment interest," this Court dismissed the appeals for lack of appellate jurisdiction.  Order, *Griffith Foods Int'l Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 23-2688 (Dec. 22, 2023).  The district court then granted Griffith's and Sterigenics' motions for additional defense costs and prejudgment interest, bringing total damages to

approximately $23 million for Griffith and $110 million for Sterigenics. The court then entered final judgments. RSA53-56.

## SUMMARY OF ARGUMENT

The district court erred in refusing to dismiss this case, in declaring that National Union had a duty to defend, and in awarding $110 million in damages to Sterigenics.

I. The district court should have dismissed this case under Rule 19. This Court has twice held that when there is parallel federal and state court insurance litigation and an insured's other insurers cannot be joined in the federal action, the federal action must be dismissed in favor of a more comprehensive state-court resolution. *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 286 (7th Cir. 1996); *Evergreen Park Nursing & Convalescent Home, Inc. v. Am. Equitable Assurance Co.*, 417 F.2d 1113, 1115-16 (7th Cir. 1969). Dismissal of the federal action avoids duplicative litigation and inconsistent judgments, while allowing the state court to globally and definitively resolve state-law issues.

This case is governed by *Evergreen* and *Sta-Rite*. There is an ongoing Illinois state-court action involving Griffith, Sterigenics, and 13 of their insurers, including National Union. *That* action, which Griffith

initiated, is the proper venue for resolving the Illinois-law issues in this case. Unless this case is dismissed, National Union risks being subject to inconsistent judgments and left without a contribution remedy against the other insurers. The district court's attempts to distinguish *Evergreen* and *Sta-Rite* do not withstand scrutiny.

**II.** The district court erred in deciding, on the pleadings, that National Union has a duty to defend Griffith and Sterigenics.

**II.A.** The district court erroneously declared that National Union had to defend hundreds of suits alleging exposure to Ethylene Oxide only *after* its policies expired. It reached that conclusion by analyzing the more than 800 Underlying Lawsuits as if they were one suit merely because they were litigated under a "master complaint" in state court for pretrial purposes. But under Illinois law, lawsuits consolidated solely for pretrial purposes retain their independent nature for assessing an insurer's duty to defend. This case therefore must be remanded so that each underlying complaint can be separately examined to determine National Union's duty to defend.

**II.B.** Even if the district court could rely on the master complaint, it impermissibly granted Sterigenics judgment on the pleadings despite

factual disputes regarding whether Sterigenics was insured at all. National Union never issued Sterigenics an insurance policy. It issued Griffith insurance policies with an anti-assignment clause, and Sterigenics claims that it inherited rights under those policies through a series of complicated corporate transactions involving a Griffith subsidiary. National Union denies both that Griffith's subsidiary was insured and that Sterigenics inherited any rights under the policies.

Yet the district court barred National Union from obtaining discovery into those disputed factual issues and granted judgment on the pleadings to Sterigenics. The court reasoned that the disputes were irrelevant because under the eight-corners rule, all that matters is whether the master complaint alleged facts sufficient to raise the "possibility" that Sterigenics is insured.

But the eight-corners rule does not apply to the question whether a party is insured at all. If it did, underlying plaintiffs could create insurance contracts out of thin air. And even if the eight-corners rule could apply to such a question, it does not apply in a declaratory-judgment action like this one. Regardless, the district court misread the master complaint: It alleges that Sterigenics inherited the *liabilities* of Griffith's

subsidiary, but it says nothing about assets. For each of those reasons, the district court must determine whether Sterigenics has any contractual rights at all before awarding it more than $100 million in contractual damages.

**II.C.** The district court also misconstrued the policies' pollution exclusion. Under Illinois law, that exclusion precludes coverage for "hazards traditionally associated with environmental pollution." *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72, 79 (Ill. 1997). Griffith's and Sterigenics' decades-long emission of Ethylene Oxide—a known carcinogen and "priority pollutant" in Illinois—easily qualifies.

The district court nevertheless concluded that the emissions here plausibly fall outside the exclusion because Griffith allegedly operated the Willowbrook facility pursuant to a permit issued by an Illinois agency. But that permit is irrelevant because it did not authorize Ethylene-Oxide emissions. And regardless, this Court has held that pollution permitted by law still falls within the pollution exclusion. *See Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 721 (7th Cir. 2012).

The policies' "sudden and accidental" exception to the pollution exclusion does not apply because the emissions here allegedly were

intended and expected as "ordinary and recurring parts of the business." *Fruit of the Loom, Inc. v. Travelers Indem. Co.*, 672 N.E.2d 278, 287 (Ill. App. Ct. 1996). The stray allegations in the master complaint alleging that over a 30-year period there were some accidental emissions do not prevent application of the pollution exclusion.

Nor does the policies' "personal injury" coverage impose a duty to defend, because the Underlying Lawsuits allege no "wrongful entry or eviction or other invasion of the right of private occupancy," as required by the policies. The district court concluded that the master complaint alleges emissions of carcinogens "onto the plaintiffs' private property," which it believed could support a private nuisance claim under Illinois law. But emissions of a clear, odorless gas cannot constitute a private nuisance in Illinois. And more fundamentally, the master complaint does not allege anything about any plaintiff's private property rights—only that the emissions violated the public's right to healthy air.

**II.D.**  To the extent the Court believes that these state-law issues are unclear, the Court should certify the questions to the Illinois Supreme Court. All of the issues underlying the district court's duty-to-

defend ruling are outcome-determinative, and certification would mitigate the risk of inconsistent judgments.

**III.** Finally, the district court erred in rubber stamping $101 million in defense costs that Sterigenics claims to have incurred defending the Underlying Lawsuits—nearly five times the amount Griffith incurred defending the same cases. The district court presumed those defense costs were reasonable without engaging at all with National Union's arguments to the contrary. The district court erred both in invoking a presumption of reasonableness and in treating the presumption as an irrebuttable rule of decision. At a minimum, the Court should vacate the judgments and remand for defense costs to be properly evaluated.

## STANDARD OF REVIEW

A "legal error" under Rule 19 is reversible under either de novo or abuse-of-discretion review. *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 634 (7th Cir. 2009). This Court reviews de novo a decision to enter judgment on the pleadings, as well as a ruling that an insurer owes a duty to defend. *Medmarc Cas. Ins. Co. v. Avent Am., Inc.*, 612 F.3d 607, 612 (7th Cir. 2010). The Court reviews de novo whether the district court "applied

the wrong legal framework" in assessing defense costs. *USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 46 F.4th 571, 579 (7th Cir. 2022).

## ARGUMENT

## I.   This Case Must Be Dismissed For Failure To Join Griffith's And Sterigenics' Other Insurers.

This Court has twice held that when there is parallel federal and state court insurance litigation and an insured's other insurers cannot be joined in the federal action, the federal action must be dismissed in favor of a more comprehensive state-court resolution. The district court erred in declining to dismiss on that basis.

### A.   Rule 19 Requires Dismissal When There Is A Parallel And More Comprehensive Insurance Action In State Court.

Rule 19 "addresses 'persons required to be joined'" to a lawsuit and "describes what the court must do if joinder is not feasible." *Askew*, 568 F.3d at 635. The rule's "purpose" is "to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990). That allows courts to "determine the entire controversy, and do complete justice, by adjusting all the rights involved." *Ill. Brick Co. v. Illinois*, 431 U.S. 720, 739 (1977).

Rule 19(a) provides that a party is "required" if either: (1) the court "cannot accord complete relief" in the party's absence; (2) resolving the action without the party would "as a practical matter impair or impede the person's ability to protect" their interest in the action; or (3) the party's absence may "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a).

If joinder of a "required" party is not possible (such as when joinder would destroy diversity jurisdiction), the court must determine under Rule 19(b) whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) provides "factors for the court to consider" in making that determination, including "any prejudice" to existing or absent parties, the adequacy of a judgment absent required parties, and "whether the plaintiff would have an adequate remedy if the action were dismissed." *Id.*

This Court has twice applied Rule 19 when there was parallel federal and state court insurance litigation and an insured's other insurers could not be joined in the federal action. Both times, this Court held that

Rule 19 required dismissing the federal action in favor of a more comprehensive state-court resolution. *See Evergreen*, 417 F.2d at 1115-16; *Sta-Rite*, 96 F.3d at 286.

In *Evergreen*, an insured corporation claimed that six insurance companies had issued policies covering a particular property. 417 F.2d at 1114. To recover a loss to that property, the insured sued four of the companies in federal court (omitting the two non-diverse insurers), and filed a parallel state-court action against all six insurers. *Id.*

This Court affirmed dismissal of the federal action under Rule 19. *Evergreen*, 417 F.2d at 1115-16. Applying Rule 19(a), the Court stated that the insurers "have an interest in being involved in one action" "and probably would be more comfortable in an action where the liability issue will be decided consistently as to all the companies." *Id.* at 1115. The Court further explained that the dueling state and federal proceedings prejudiced the insurers "as a practical matter" and rendered complete relief impossible, due to the "repeated lawsuits on the same essential subject matter." *Id.*

Turning to Rule 19(b), the Court also concluded that because joinder of the non-diverse parties was infeasible, the federal action had to be

dismissed.  *Evergreen*, 417 F.2d at 1115.  The Court reasoned that the third Rule 19(b) factor—the "adequa[cy]" of the judgment—"weighs heavily" in favor of dismissal when "it is evident that the state court action will adjudicate the entire controversy."  *Id.* at 1116.  That factor, the Court explained, refers to the "public stake in settling disputes by wholes, whenever possible."  *Id.* (quoting *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 111 (1968)).  And under the fourth Rule 19(b) factor, the Court found the state-court forum to be not only adequate but "a superior remedy."  *Id.*; Fed. R. Civ. P. 19(b)(4).

This Court reached the same outcome in *Sta-Rite*.  In that case, an insured corporation and its subsidiary sued all of their insurers in federal court except one non-diverse insurer.  96 F.3d at 283-84.  The insureds sought a declaration that the "insurance companies should defend" them from suits alleging "environmental contamination."  *Id.*  Subsequently, all of the insurers (including the non-diverse insurer) filed a parallel declaratory judgment action against the insureds in state court.  *Id.*  It later became apparent that one of the insurers in the federal case also was non-diverse.  *Id.* at 284.  Thus, the question before this Court was

whether, under Rule 19, the federal action could proceed without the two non-diverse insurers.

As in *Evergreen*, this Court held that Rule 19 required dismissal. The non-diverse insurers were required parties under Rule 19(a) because the federal case raised insurance-coverage issues that affected all of the insurers, "including which policies (if any) are implicated by plaintiffs' claims" and "allocation of defense … liability." *Sta-Rite*, 96 F.3d at 285-86. Resolving those issues without the non-diverse insurers would have "require[d] duplicative litigation" and risked "inconsistent rulings between federal and state courts." *Id.* And that would have inflicted "substantial prejudice" on all insurers while "preclud[ing] the federal courts from affording complete relief." *Id.* at 286; Fed. R. Civ. P. 19(a).

In concluding that dismissal was required under Rule 19(b), the Court again emphasized the prejudice to the insurers and the likelihood of duplicative litigation. *Sta-Rite*, 96 F.3d at 286; Fed. R. Civ. P. 19(b)(1)-(3). In addition, as in *Evergreen*, "the ongoing state action in which all the parties and issues are before one court demonstrates that an adequate (indeed, likely better) remedy is available in another venue." *Sta-Rite*, 96 F.3d at 286; Fed. R. Civ. P. 19(b)(4). Unlike the federal

courts, the state court could "grant complete relief in one action to all appropriate parties as well as take the first cut at th[e] … state law issues." *Sta-Rite*, 96 F.3d at 286.  The Court therefore dismissed the federal action in favor of a comprehensive state-court resolution.

## B. This Case Must Be Dismissed In Favor Of A Comprehensive State-Court Resolution.

*Evergreen* and *Sta-Rite* compel dismissal of this case.  Like the insureds in *Evergreen* and *Sta-Rite*, Griffith and Sterigenics have pursued parallel duty-to-defend suits—an action against National Union in federal court and an action in state court involving 13 of their insurers.  Like the *Evergreen* and *Sta-Rite* plaintiffs, moreover, Griffith and Sterigenics raise state-law insurance-coverage issues that apply to all the insurers, who "have an interest in being involved in one action."  *Evergreen*, 417 F.2d at 1115.  And here, just like in *Evergreen* and *Sta-Rite*, there is a later-filed, "ongoing state action in which all the parties and issues are before one court."  *Sta-Rite*, 96 F.3d at 286.  That forum provides all parties "an adequate (indeed, likely better) remedy" for resolution of the state-law issues. *Id.*

Thus, under a straightforward application of *Evergreen* and *Sta-Rite*, this federal action must be dismissed under Rule 19 in favor of a

comprehensive state-court resolution. That is the only way to provide "complete relief" to all insurers while avoiding the prejudice that would flow from "inconsistent rulings between federal and state courts." *Sta-Rite*, 96 F.3d at 286; *see also Schlumberger Indus., Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286-87 (4th Cir. 1994) (Rule 19 requires dismissal where insurers covering "different policy periods" are litigating in state and federal court).

At least two additional factors make this an even stronger case for dismissal than *Evergreen* and *Sta-Rite*.

First, National Union faces an unusually "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" if this case is not dismissed. Fed. R. Civ. P. 19(a)(1)(B)(ii). National Union's policies spanned approximately one of the 35 years in which Griffith and Sterigenics allegedly emitted Ethylene Oxide at the Willowbrook facility. Yet if this Court were to affirm the district court's duty-to-defend ruling, and if the state court were to hold that the other insurers do not have a duty to defend the Underlying Lawsuits—for any of the reasons discussed in Part II, *infra*—the other insurers likely would argue that the state-court judgment precludes National Union from seeking contribution. *See*

*Indem. Ins. Co. of N. Am. v. Westfield Ins. Co.*, 58 F.4th 276, 282 (7th Cir. 2023) ("[A]n insurer does not have a duty to contribute to a defense if it does not have a duty to defend."). Proceeding on two tracks thus could result in National Union footing the entire defense bill despite having insured (at most) a fraction of the claims. Rule 19 was designed to "avoid" precisely this kind of "sole responsibility for a liability [the defendant] shares with another." *Provident Tradesmens Bank*, 390 U.S. at 110.

Second, Griffith and Sterigenics themselves have acknowledged the harms that could result from inconsistent rulings on the issues presented here. In February 2023, one of Sterigenics' insurers filed a parallel action in Delaware. JA336. Griffith and Sterigenics both moved to dismiss or stay the Delaware action in favor of the comprehensive Illinois action to "avoid … the risk of inconsistent results." Griffith Mot. to Dismiss at 5, *Zurich Am. Ins. Co. v. Sterigenics U.S., LLC*, No. 23C-02-232 (Del. Super. Court May 19, 2023); *see also* Sterigenics Mot. to Dismiss at 16, *Zurich*, No. 23C-02-232 (arguing for a stay based on the "possibility of inconsistent and conflicting rulings"). And the Delaware court stayed the action on that very basis. Mem. Op. at 19-20, *Zurich*, No. 23C-02-232 (Del. Super. Court Jan. 26, 2024). "[E]quity and good conscience" should not

permit Griffith and Sterigenics to accept the risk of inconsistent judgments only when it benefits them. Fed. R. Civ. P. 19(b).

The proper way to solve all of these problems, as *Evergreen* and *Sta-Rite* held, is to require these issues to be litigated in the parallel Illinois action. Only the Illinois court "can grant complete relief in one action to all appropriate parties." *Sta-Rite*, 96 F.3d at 286.

The district court's refusal to dismiss under Rule 19 was a clear misapplication of Rule 19 and this Court's precedents. The district court did not even address *Evergreen*, and none of its attempts to distinguish *Sta-Rite* withstands scrutiny.

*First*, the district court asserted that *Sta-Rite* does not apply here because the federal and state lawsuits in that case were filed by the insured on "the *same day*," whereas here, the state action was filed later. RSA39. But the relevant state-court action in *Sta-Rite* was *not* the one filed by the insured; that suit was dismissed. *Sta-Rite*, 96 F.3d at 284 & n.2. Rather, the relevant state-court action was the suit brought "[l]ater" by "all of the insurers." *Id.* at 284; *see also Schlumberger*, 36 F.3d at 1277 (applying *Evergreen* to a state-court action filed "one month after" the federal case). If anything, a later-filed state-court action brought by the

insured (as here) provides *greater* reason to dismiss under Rule 19, because it is a concession by the insured that there is "an adequate remedy" in state court.  Fed. R. Civ. P. 19(b)(4).

*Second*, the district court suggested that *Sta-Rite* is inapplicable because it involved "issues of first impression under Wisconsin insurance law."  RSA10.  But this Court in *Evergreen* dismissed under Rule 19 without considering whether the state-law issues were "of first impression" or even close calls.  Regardless, as discussed below, the duty-to-defend issues in this case raise several important questions of Illinois law that the Illinois Supreme Court has not directly addressed.  *See* Part II, *infra*.

*Third*, the district court stated that *Sta-Rite* is distinguishable because the parties in that case had only exchanged "mandatory discovery" when the case was dismissed, whereas here the district court had issued an interlocutory ruling on National Union's duty to defend.  RSA10-11.  The timing here, however, is attributable to Griffith's decision to wait to sue its other insurers until after the district court issued its duty-to-defend order.  Until that parallel litigation began, the risk of inconsistent judgments likely was not substantial enough to justify dismissal.  National Union moved to dismiss just weeks after Griffith made that

decision; it should not suffer prejudice as a result of its opponents' litigation tactics, especially because National Union had earlier attempted to implead Griffith's and Sterigenics' other insurers to seek contribution. Moreover, the Fourth Circuit has reached the same result as *Sta-Rite* despite the Rule 19 issues not being raised until after the district court reached *final* judgment. *See Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 497 F. App'x 313, 317-18 (4th Cir. 2012) (per curiam) (rejecting argument that "issues of finality and judicial economy" prevent dismissal under Rule 19 when first raised on appeal in case "filed over three years ago that has gone to final judgment").

*Fourth*, the district court suggested in a footnote that *Sta-Rite* might not be binding because this Court "affirmed on an alternative ground, lack of subject matter jurisdiction." RSA40 n.4. That is wrong. *Sta-Rite* dismissed for lack of subject matter jurisdiction *because* the Court could not sever one of the non-diverse insureds from the federal case consistent with Rule 19. 96 F.3d at 287-88. The Court's Rule 19 analysis therefore was a necessary part of the disposition. Moreover, even an "alternative holdin[g]" is "still entitled to precedential weight,"

*Whetsel v. Network Prop. Servs., LLC*, 246 F.3d 897, 903 (7th Cir. 2001), as is *Evergreen*.

*Fifth*, the district court concluded that the possibility of inconsistent rulings in this case does not matter because "a future contribution action would remedy that concern." RSA40. That reasoning ignores that the parallel state proceeding could foreclose a contribution action if the state court holds the insurers have no duty to defend. The cases the district court relied on did not involve a parallel state-court action. *See Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*, 2021 WL 1962403, at *3 (N.D. Ill. May 17, 2021) (citing *Rhone–Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995)). *Evergreen* and *Sta-Rite* did. And those cases recognized that there *is* a risk of inconsistent judgments in these exact circumstances. *See Sta-Rite*, 96 F.3d at 285-86; *Evergreen*, 417 F.2d at 1115.

*Finally*, the district court believed it could accord "complete relief" between National Union and Griffith and Sterigenics, despite the absence of the 12 other insurers. RSA40. But *Sta-Rite* held exactly the opposite: "[T]he potential for inconsistent rulings between federal and state courts, and the potential of an inequitable result in its absence, …

preclude the federal courts from affording complete relief." 96 F.3d at 286. And even if complete relief were possible, joinder of the absent insurers still would be required to avoid the prejudice resulting from parallel proceedings. *See* Fed. R. Civ. P. 19(a)(1)(B).

In short, the district court's decision to bring this case to judgment cannot be squared with *Evergreen* and *Sta-Rite*. This Court should vacate the district court's judgments and remand with instructions to dismiss under Rule 19 in favor of a comprehensive resolution of state-law issues in the parallel state-court proceeding.

## II. The District Court's Duty-To-Defend Ruling Is Deeply Flawed.

If the Court reaches the merits, it should reverse the district court's ruling that National Union has a duty to defend Griffith and Sterigenics in the Underlying Lawsuits. The district court impermissibly required National Union to defend each of the 800-plus Underlying Lawsuits, even though National Union's policies indisputably do not cover most of those suits. It erroneously granted judgment on the pleadings to Sterigenics despite material factual disputes about whether Sterigenics is even insured. And it determined that allegations of emitting a carcinogenic gas for more than three decades did *not* involve traditional environmental

pollution but *did* involve a "wrongful entry or eviction or other invasion of the right of private occupancy."

## A. The District Court Erred In Requiring National Union To Defend Hundreds Of Lawsuits That Its Policies Indisputably Do Not Cover.

The district court erred by requiring National Union to defend hundreds of lawsuits that allege no exposure to Ethylene Oxide during the time periods covered by the policies.

National Union agreed in the policies "to defend any *suit* against the insured seeking damages on account of" a covered injury occurring *within* the policy period. JA230 (emphasis added). National Union thus did not agree to defend any "suit" that alleges a covered injury occurring *outside* the policy period. *See, e.g.*, *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1129 (7th Cir. 2012) (no duty to defend when "the underlying allegations accrue outside of the relevant policy period"). The meaning of "suit" is "clear and unambiguous": It refers to an "action in a court of law." *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 847 (Ill. 1995).

This case involves more than 800 suits—each with a separate complaint seeking separate damages against Griffith and Sterigenics.

National Union's duty to defend each of those suits must be separately determined based on when each complaint alleges the individual was exposed to Ethylene Oxide. Yet the district court declared that National Union has a duty to defend *all* of those lawsuits based solely on the allegations in a "master complaint." That was error.

Under Illinois law, when cases are "consolidated" merely "for discovery purposes," they "maintain[] [their] separate identit[ies]." *Bernstein v. Hall*, 2013 WL 3377454, at *1 (Ill. App. Ct. June 28, 2013). Such "consolidation [is] done only for convenience and economy," and does not "merge the causes into a single suit, or change the rights of the parties, or make those who were parties in one suit parties in another." *Id.* at *4 (quotation marks omitted); *see also generally Dowe v. Birmingham Steel Corp.*, 963 N.E.2d 344, 350 (Ill. App. Ct. 2011) (explaining when, under Illinois law, consolidated cases remain separate). That remains true when the plaintiffs file a "master complaint." *Bearden v. Conagra Foods, Inc.*, 2021 WL 6144061, at*2 (Ill. App. Ct. Dec. 30, 2021).

That principle bears directly on the duty-to-defend analysis. Courts applying Illinois law have held that an insurer's duty to defend one suit is "unaffected by the state court's decision to consolidate" it with another

lawsuit "for discovery purposes." *Collins Eng'rs, Inc. v. Travelers Prop. Cas. Co. of Am.*, 449 F. Supp. 3d 778, 786 (N.D. Ill. 2020) (applying Illinois law), *vacated on other grounds*, 2020 WL 5491519. That is because "[d]amages are not sought in the" consolidated pretrial procedures, "but in each underlying case." *Fed. Ins. Co. v. 3M Co.*, 642 F. Supp. 3d 882, 897 (D. Minn. 2022). It is only when the underlying suits are "consolidated for *all* purposes," such that they lose their individual identities, that an insurance company's "duty to defend" one suit could "obligate[]" it to "provide a defense for the" others "as well." *Collins*, 449 F. Supp. 3d at 786; *see also Farmers Auto. Ins. Ass'n v. Neumann*, 28 N.E.3d 830, 833-34 (Ill. App. Ct. 2015).

The underlying litigation here involved the kind of partial consolidation in which each suit retained its identity. The Illinois court "consolidated" the Underlying Lawsuits "for pretrial purposes, discovery-related matters, and matters prior to trial assignment purposes only." Order, *Kamuda v. Sterigenics*, No. 2018-L-010475 (Ill. Cir. Ct. Oct. 15, 2019). In keeping with the court's consolidation order, the underlying plaintiffs filed a master complaint, but they were clear that they were not "proposing any joint trials and/or joint decision." JA646 n.1. Indeed, two of the

underlying plaintiffs tried their individual cases without the participation of the other underlying plaintiffs. *See supra* at 11.

Because the more than 800 Underlying Lawsuits against Griffith and Sterigenics retained their individual identities, each constitutes an individual "suit" under the policies. Most of the more than 800 suits had their own individual complaint that incorporates the master complaint but also includes plaintiff-specific information, including when the plaintiff was first exposed to Ethylene Oxide. The remaining complaints are freestanding, and did not incorporate the master complaint at all. *E.g.*, *Sterigenics*, ECF 90-6. The individual complaints were the operative pleadings in each case. The master complaint was just a procedural tool. Thus, the allegations of each individual complaint must be compared to the policies to determine National Union's duty to defend each one.

Below, National Union reserved its right to argue that it had no duty to defend suits alleging an injury that occurred after the policies expired. *Sterigenics*, ECF 32, at 14 n.8. National Union ultimately learned that at least 508 of the Underlying Lawsuits were brought by plaintiffs who allege that they were not exposed to Ethylene Oxide until after National Union's policies expired in 1984. *See* JA480. On their face,

those suits do not allege any covered injury within the effective dates of the policy, so National Union has no duty to defend them. *See, e.g.*, *Northfield*, 701 F.3d at 1129; *State Auto Prop. & Cas. Ins. Co. v. Bell & Arthur Condo. Ass'n*, 454 F. Supp. 3d 792, 799-801 (N.D. Ill. 2020). This Court should reverse the district court's contrary determination and remand with instructions to assess which suits National Union must defend and allocate costs appropriately.

## B. The District Court Must Resolve Whether Sterigenics Is Insured Before Requiring National Union To Defend.

Even when assessed against the master complaint, the district court's duty-to-defend ruling cannot stand. The district court erred in granting judgment on the pleadings to Sterigenics because there remain unanswered factual questions about whether Sterigenics is a "named insured" entitled to coverage under the policies.[1]

### 1. There Are Disputes Of Material Fact About Whether Sterigenics Is An Insured Party.

Judgment on the pleadings "should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Federated Mut.*

---

[1] This issue pertains only to Sterigenics.

*Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *Id.*

Here, there are factual disputes about whether Sterigenics is a "named insured." It is undisputed that National Union never issued Sterigenics an insurance policy. But Sterigenics alleges that it inherited "named insured" status from Micro-Biotrol, a Griffith subsidiary, through a series of corporate transactions. There remain fact disputes about at least two key premises of that theory.

*First*, there are material factual disputes regarding whether Micro-Biotrol was a "named insured" under the policies. The policies provide that a "named insured" includes certain entities formed by Griffith "during the policy period," but *only if* the newly formed entity was not "insured under any other liability or indemnity policy." JA264.

Sterigenics alleged in its complaint that Micro-Biotrol was formed during one of the policy periods and "was not an insured under any other liability or indemnity policy." JA21-22. But National Union denied that allegation in its answer, and there has been no discovery. JA195-96. National Union is entitled to conduct discovery regarding Micro-Biotrol's

other insurance policies before having a $110 million judgment imposed against it based on the mere *allegation* that Micro-Biotrol was insured under the policies.

*Second*, there are material factual disputes about whether Sterigenics inherited whatever rights Micro-Biotrol might have had under the policies. Sterigenics alleged in its complaint that it inherited Micro-Biotrol's rights through a complicated "succession of name changes and mergers." JA25. But here too, National Union has denied those allegations, and there has been no discovery. JA194-202.

Discovery might well reveal that the transactions did not occur as alleged by Sterigenics or that the policies did not transfer as part of those transactions. In particular, Sterigenics' alleged corporate history omits the 1999 sale of Micro-Biotrol. *Compare* JA25, *with* JA67. Discovery into the nature of that transaction could reveal that Sterigenics did not inherit Micro-Biotrol's rights. Among other issues, the policies contain an anti-assignment clause, which requires National Union's consent for any assignment of the policies. If Sterigenics' predecessor acquired Micro-Biotrol through an asset sale, as opposed to a merger, it may have been unable to acquire rights under the policies without National Union's

44

consent (which it does not allege it obtained). *See* JA252; *Knoll Pharm. Co. v. Auto. Ins. Co.*, 167 F. Supp. 2d 1004, 1007 (N.D. Ill. 2001).

### 2. The District Court Erred In Holding That The Fact Disputes Are Irrelevant.

The district court nevertheless granted Sterigenics judgment on the pleadings under Illinois' "eight corners rule." Under that rule, a court determines an insurer's duty to defend by comparing "the allegations of the underlying complaint to the policy language." RSA8. The district court held that the master complaint's allegations regarding Sterigenics' acquisition of Micro-Biotrol "through a series of corporate transactions" sufficed to raise "at least the 'possibility' that Sterigenics is covered as a 'named insured.'" RSA10-11. The court thereby avoided the disputes about whether Sterigenics is *in fact* a "named insured." The district court's analysis is erroneous for three independent reasons.

*First*, the eight-corners rule does not apply to the question whether Sterigenics inherited rights under the policies. An "insurer's duty to defend" arises from its "contract" with the insured. *Zurich Ins. Co. v. Raymark Indus., Inc.*, 514 N.E.2d 150, 161 (Ill. 1987). Yet National Union never contracted with Sterigenics. It contracted with Griffith and included an anti-assignment clause to ensure that a company that later

45

purchased Griffith (or one of its insured subsidiaries) would not automatically inherit those contractual rights.

Because an insurer's duty to defend is a contractual obligation to its insured, "[b]efore the general principle regarding the duty to defend applies, it must be shown that the person claiming coverage is, in fact, an insured." 1 Allan D. Windt, *Insurance Claims and Disputes* § 4:5 (6th ed.). An "insurer is not obligated to provide defense for a stranger merely because the plaintiff alleges facts that, if true, would make the stranger an additional insured as defined in the policy." *Id.* Instead, a "court may look beyond the allegations of the underlying complaint if the coverage issue involves the question of whether the party asserting coverage is a proper insured under the policy." *Erie Ins. Exch. v. Aral Constr. Corp.*, 225 N.E.3d 41, 50 (Ill. App. Ct. 2022).

Thus, in . *Insurance Co. of America v. Clark Mall, Corp.*, 631 F. Supp. 2d 968, 974 (N.D. Ill. 2009), the court rejected the argument that the "characterization" of the putative insured "in the Underlying complaint determines whether it is covered." Such a rule would contravene "the most basic principle of contracts"—"that the contracting parties

must agree to enter into the contract"—and would "impose a contractual relationship on [the insurer] to which it never agreed." *Id.*

Here, the master complaint's allegations cannot require National Union to pay Sterigenics more than $100 million if Sterigenics never had any contractual rights under the policies at all. On this critical threshold question, the eight-corners rule does not apply. The district court should have permitted targeted discovery to determine whether Sterigenics is *in fact* a named insured.

In concluding otherwise, the district court relied on *American Alternative Insurance Corp. v. Metro Paramedic Services, Inc.*, 829 F.3d 509 (7th Cir. 2016). But in that case, the underlying allegations established that a party was in a joint venture with the insureds, and therefore qualified as a named insured under the terms of the contract. The relationship of the third party to the named insured was readily ascertainable because the third party and named insured were in privity and the contract evidencing the relationship was in the record. *Metro Paramedic* did not hold that mere allegations in an underlying complaint can conclusively establish the much more complex insured-status issue in this case, where a company allegedly inherited contractual rights through decades

of complex corporate transactions in the face of an anti-assignment clause.

*Second*, the eight-corners rule does not apply when the insurer has sought a declaration that it has no duty to defend. Instead, "[u]nder Illinois law an insurer that seeks a declaration of its duty to defend may offer evidence outside the underlying complaint for purposes of establishing that no duty exists," so long as the evidence "does not tend to determine an ultimate issue in the underlying proceeding." *Landmark Am. Ins. Co. v. Hilger*, 838 F.3d 821, 822, 825 (7th Cir. 2016); *see also Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1018-19 (Ill. 2010).

In this case, National Union sought a declaration that it had no duty to defend. RSA25. As the district court recognized, one of National Union's affirmative defenses "request[ed] that th[e] Court find and declare that Plaintiffs are not entitled to any relief." JA217, 684. And National Union moved for judgment on the pleadings based on the pollution exclusion, again requesting a judgment "declaring that National Union has no duty to defend." *Sterigenics*, ECF 31, at 2.

It does not matter that National Union sought this declaration in an answer instead of a complaint. "It is the fact of the proceeding itself,

and not the identity of the party initiating the proceeding, that is of legal import." *Sentinel Ins. Co. v. Walsh Constr. Co.*, 298 F. Supp. 3d 1165, 1176 (N.D. Ill. 2018) (brackets omitted) (quoting *L.A. Connection v. Penn-Am. Ins. Co.*, 843 N.E.2d 427, 431 (Ill. App. Ct. 2006)). Were the law otherwise, the rights of the parties to introduce evidence beyond the state-court complaint would be determined by a "race to the courthouse." *Id.* at 1175.

Nor would evidence regarding whether Sterigenics is a named insured "tend to determine an ultimate issue in the underlying proceeding." *Landmark*, 838 F.3d at 825. The factual questions at issue here—whether Micro-Biotrol had other insurance policies and whether Sterigenics inherited Micro-Biotrol's rights in the policies—are irrelevant to the Underlying Lawsuits. *See Bituminous Cas. Corp. v. Fulkerson*, 571 N.E.2d 256, 261 (Ill. App. Ct. 1991) (whether a plaintiff is a "proper insured" is an "ancillary matter[]"). That is presumably why, as discussed below, those facts are nowhere alleged in the Underlying Lawsuits.

*Third*, even assuming the eight-corners rule applies here, the master complaint does not contain allegations sufficient to treat Sterigenics as a "named insured." The eight-corners rule "applies only to facts that

are explicitly alleged" in the underlying complaint. *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 812 (7th Cir. 2010). It "is the actual complaint, not some hypothetical version, that must be considered." *Id.*

Here, the master complaint does not contain allegations regarding Sterigenics' insured status. The sole relevant paragraph in the master complaint alleges that Sterigenics "assumed the liabilities" of Micro-Biotrol (and other related entities) "[t]hrough a series of acquisitions, mergers, and name changes." JA47. That paragraph does not allege the facts necessary to determine whether Micro-Biotrol was a "named insured" when formed, because it not does state whether Micro-Biotrol had other insurance policies at the time. Nor does the master complaint allege that Sterigenics obtained Micro-Biotrol's *assets*—it alleges only that Sterigenics assumed certain "liabilities" of Micro-Biotrol. *See Knoll*, 167 F. Supp. 2d at 1007-08 (discussing insurance policies as assets). Each of those gaps in the master complaint should have precluded judgment on the pleadings.

Nor is it clear that Sterigenics would have inherited the insurance policies through the alleged corporate transactions. The district court

suggested that insurance policies generally transfer to successor entities in merger transactions. RSA10-11. But the master complaint also alleges that Sterigenics succeeded to Micro-Biotrol through "acquisitions," and that Griffith "sold its sterilization business." JA47, 40. If such a sale occurred, the policies may not have been transferred to Sterigenics, particularly given the policies' anti-assignment clause. *See Knoll*, 167 F. Supp. 2d at 1007-09.

In overlooking those missing allegations, the district court impermissibly imposed on National Union a duty to defend Sterigenics based on "hypothetical[s]," not "facts that [were] explicitly alleged." *Amerisure*, 622 F.3d at 812. The judgment against Sterigenics must be vacated so that the parties can conduct targeted discovery to determine whether Sterigenics is in fact a "named insured."

## C. The District Court Erred In Finding A Duty To Defend Despite The Pollution Exclusion.

### 1. The Pollution Exclusion Applies To Decades-Long, Deliberate Emissions Of A Known Pollutant.

An insurer has a duty to defend under Illinois law if "the facts alleged in the complaint fall within, or potentially within, the language of the policy." *Koloms*, 687 N.E.2d at 75. "One way for an insured's claim

to fall outside of a policy's coverage is for it to fall *within* an exclusion." *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 868 (7th Cir. 2021).

The pollution exclusion in National Union's policies precludes coverage for "bodily injury" "arising out of the discharge, dispersal, release or escape of … toxic chemicals, liquids or gases, … contaminants or pollutants into or upon land, the atmosphere or any water course or body of water," except when the "discharge, dispersal, release or escape is sudden and accidental." JA230, 261. The Underlying Lawsuits unambiguously fall within that exclusion.

**a.** The policies' pollution exclusion applies to longstanding, intentional emissions of a known toxic gas. Under Illinois law, a pollution exclusion in a general commercial liability policy precludes coverage of "hazards traditionally associated with environmental pollution." *Koloms*, 687 N.E.2d at 79. Its heartland application is to "hazardous material discharged into the land, atmosphere, or any watercourse or body of water." *Kim v. State Farm Fire & Cas. Co.*, 728 N.E.2d 530, 535 (Ill. App. Ct. 2000). And its purpose is to "avoid[] 'the yawning extent of potential liability arising from the gradual or repeated discharge of hazardous

substances into the environment.'" *Koloms*, 687 N.E.2d at 81 (emphasis omitted).

No one disputes that the discharge of Ethylene Oxide into the air for more than three decades qualifies as traditional environmental pollution. Ethylene Oxide is a known carcinogen and is recognized by Illinois as a "priority" (that is, dangerous) pollutant. *E.g.*, JA57-59.

The district court nonetheless concluded that the pollution exclusion's application to the Underlying Lawsuits was not "clear and free from doubt," because Griffith allegedly was operating the Willowbrook facility pursuant to a permit issued by the Illinois Environmental Protection Agency ("IEPA"). RSA15-16.

In reaching that conclusion, the district court relied primarily on a decision by an Illinois intermediate appellate court holding that a pollution exclusion was "arguably ambiguous as to whether the emission of hazardous materials in levels permitted by an IEPA permit constitute traditional environmental pollution." *Erie Ins. Exch. v. Imperial Marble Corp.*, 957 N.E.2d 1214, 1221 (Ill. App. Ct. 2011); *see also Country Mut. Ins. Co. v. Bible Pork, Inc.*, 42 N.E.3d 958, 970 (Ill. App. Ct. 2015) (applying *Erie*). The district court's reliance on *Erie* was misplaced.

*Erie* is inapposite here because the master complaint alleges that IEPA believed Griffith's Ethylene Oxide emissions were "several magnitudes higher than desirable." JA56. The master complaint further alleges that, although IEPA did "not have any established standards for Ethylene Oxide at th[e] time," IEPA's permit made Griffith "responsible" for "emissions of Ethylene Oxide and other volatile organic materials from the facility," and did "not release [Griffith] from any liability for any loss" caused by its operation of the facility. JA62-64. Unlike in *Erie*, therefore, the permit here could not possibly be construed as authorizing the Ethylene Oxide emissions.

But even if the permit had authorized the emissions, *Erie* could not apply here because it conflicts with this Court's subsequent binding precedent. This Court has held that emissions of a pollutant in levels "permitted by environmental regulations" unambiguously fall within the pollution exclusion. *Scottsdale Indem. Co. v. Vill. of Crestwood*, 673 F.3d 715, 721 (7th Cir. 2012). In *Scottsdale*, the insureds argued that a pollution exclusion did not apply to emissions of perc into the water supply that were "below the maximum level permitted by environmental regulations." *Id.* This Court rejected that argument: "All that counts is that

the suits are premised on a claim that the perc caused injuries for which the plaintiffs are seeking damages, and that claim triggers the pollution exclusion." *Id.*

*Scottsdale* is binding. "The precedential force of [this Court's precedent] is not impaired by a handful of Illinois Appellate Court opinions arguably stating the law differently." *H.A.L. NY Holdings, LLC v. Guinan*, 958 F.3d 627, 634 (7th Cir. 2020); *see also Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004) ("decisions of intermediate state courts … do not themselves liberate district judges from the force of our decisions").

Even if *Scottsdale* were not binding, the district court still erred because the Illinois Supreme Court likely would adopt *Scottsdale*'s reasoning, not *Erie*'s. *See Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 (7th Cir. 2024) (rejecting "[a]n overly rigid deference to the decision of an intermediate appellate court" because the "north star" is discerning how "the highest court of the state" would rule). Whether pollution was authorized by permit is irrelevant to whether it is "traditional environmental pollution." *Koloms*, 687 N.E.2d at 82. The focus of the traditional-pollution inquiry is the nature of the pollution,

not its legal status.  *See id.* at 81; *Kim*, 728 N.E.2d at 535 (pollution exclusion applies to "hazardous material discharged into the land," regardless how or why it was discharged).  After all, even legally authorized pollution can cause serious injuries if "the relevant regulations are too lax." *Scottsdale*, 673 F.3d at 721.  The district court erred in declining to follow this Court's precedent.

**b.**   The district court further erred in holding that Sterigenics is arguably entitled to coverage under the pollution exclusion's "sudden and accidental" exception.  Under Illinois law, the sudden-and-accidental exception applies only when the pollution was "unexpected or unintended." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1219-20 (Ill. 1992).  The exception is inapplicable when "the insured expected and intended to discharge the particular toxi[n] it is alleged to have discharged." *Id.* at 1222 (emphasis omitted).  Releases of pollutants "must be deemed to have been expected" by the insured when they were "ordinary and recurring parts of the business." *Fruit of the Loom*, 672 N.E.2d at 287.[2]  And when pollution is a recurring part of the business, stray

---

[2] *See also, e.g.*, *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 470 F. Supp. 2d 873, 895 (C.D. Ill. 2007) (sudden-and-accidental exception did not apply where leaks and spills were ordinary occurrence); *Am. Motorists Ins. Co. v. Stewart Warner Corp.*, 2004 WL 1444889, at *4 (N.D. Ill. June 25, 2004) (sudden-and-

allegations of additional accidental releases cannot vitiate the pollution exclusion. *See id.*; *see also Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.*, 938 F.2d 1423, 1428-29 (1st Cir. 1991) ("fringe" allegations of accidental spills insufficient when company polluted "purposefully and regularly" "for a lengthy period of time").

Griffith's and Sterigenics' alleged emissions of Ethylene Oxide were not "sudden and accidental"—they were a recurring byproduct of the business. The master complaint alleges that Griffith and Sterigenics operated an Ethylene Oxide sterilization facility for 35 years. JA53, 81. Through the operation of that facility, Griffith and Sterigenics allegedly "intended" to cause "massive unfiltered emissions of [Ethylene Oxide] into the Willowbrook community 24 hours a day, 7 days a week, 365 days a year." JA61, 120, 140. They allegedly knew that Ethylene Oxide was carcinogenic and that their facility emitted dangerous levels of Ethylene Oxide. JA57-59. Yet they "made a decision not to control [Ethylene Oxide] emissions," which "resulted in the unnecessary emission of [Ethylene Oxide] into the surrounding community of at least 25,000 pounds each

---

accidental exception did not apply because "spills occurred with regularity, such that [the insured] must have expected the solvent releases and discharges under Illinois law").

year, or a total of at least 400,000 pounds between 1984 and 1999." JA72-73.

The district court acknowledged all of this. RSA17. But it nonetheless concluded that the "sudden and accidental" exception reinstates coverage for Sterigenics based on two paragraphs of the 118-page master complaint. Those paragraphs allege that Sterigenics' failure to supervise and failure to train employees resulted in "unintended leaks, spills, or emissions." JA113-16.[3] Those allegations, the district court reasoned, are "all that is needed to trigger the 'sudden and accidental' exception." RSA18.

That is wrong. The clear thrust of the complaint is that Griffith and Sterigenics deliberately caused decades-long emissions of Ethylene Oxide into the atmosphere as an "ordinary and recurring" part of their operation of the Willowbrook facility. *Fruit of the Loom*, 672 N.E.2d at 287. In light of those allegations, stray or "fringe" assertions of other accidental Ethylene Oxide emissions cannot render the pollution exclusion inapplicable. *See id.*; *Lumbermens*, 938 F.2d at 1429; *see also Ray*

---

[3] Griffith is not alleged to have caused any unintended emissions, so it has no basis for claiming coverage under the sudden-and-accidental exception, as the district court recognized. RSA16.

*Indus., Inc. v. Liberty Mut. Ins. Co.*, 974 F.2d 754, 768-69 (6th Cir. 1992) ("individual instance" of "sudden" pollution does not trigger the exception where "the entire pattern of conduct was not a 'sudden and accidental' occurrence").

That is particularly so here, because the master complaint does not identify a single specific instance of an accidental release. It instead refers vaguely to "unintended leaks, spills, or emissions." JA113-16; *cf. Fruit of the Loom*, 672 N.E.2d at 287 (rejecting more specific allegations of accidental releases). And even those alleged releases derived from an alleged intentional and pervasive failure by Griffith and Sterigenics to adequately supervise or train their employees. *E.g.*, JA92 (alleging that Griffith and Sterigenics "told employees to ignore warning lights in the facilities indicating high levels of [Ethylene Oxide]").

The contrary approach adopted by the district court "would eviscerate the [pollution] exclusion" in most cases because "almost any event can be labelled unexpected," and almost all long-term polluters will necessarily have *some* unintentional emissions or spills. *Lumbermens*, 938 F.2d at 1428. That would result in "a very small tail wagging a very large dog" in pollution cases. *Id.* at 1429. Under the district court's approach,

for example, a bare allegation of a single accidental spill of Ethylene Oxide would require National Union to pay $110 million to defend Sterigenics from allegations of injuries caused by deliberate, regular, and decades-long pollution. That is not a plausible interpretation of the pollution exclusion.

Moreover, the alleged leaks or spills are of the very same contaminant that was deliberately emitted for decades: Ethylene Oxide. Because "the relevant consideration 'is whether the insured expected and intended to discharge the particular toxi[n] it is alleged to have discharged and for which it now seeks coverage,'" *Fruit of the Loom*, 672 N.E.2d at 287 (emphasis omitted) (quoting *Outboard Marine*, 607 N.E.2d at 1222), the allegations in the master complaint fall within the pollution exclusion.

* * *

The district court's interpretations of the pollution exclusion and the sudden-and-accidental exception are untenable standing alone—but particularly so when considered in combination. Under the district court's view, the policies would cover almost no pollution that is a *planned* part of a business's operations because that pollution would

60

(almost certainly) be conducted pursuant to a permit or license. But the policies also would cover all *unplanned* pollution under the sudden-and-accidental exception. This Court should reject an interpretation of the policies that would nullify the pollution exclusion.

### 2. The Master Complaint Alleges Only "Bodily Injury," Not "Personal Injury."

The district court held, in the alternative, that National Union has a duty to defend the Underlying Lawsuits because the master complaint alleges a "personal injury," which this Court has said is not subject to the pollution exclusion. *See Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1042 (7th Cir. 1992). As relevant here, the policies define "personal injury" as an injury arising out of the "wrongful entry or eviction or other invasion of the right of private occupancy." JA231.

The district court concluded that the master complaint alleges "personal injury" because the complaint "contains allegations" that Griffith and Sterigenics "emitted carcinogens onto the plaintiffs' private property." RSA21-22. Those allegations, the district court said, "'potentially give rise to' a private nuisance claim" and thereby bring the Underlying

Lawsuits within personal-injury coverage. RSA22. That reasoning is flawed.

As an initial matter, the master complaint does *not* allege facts that could support a private nuisance claim. Illinois courts have "repeatedly described a private nuisance as something that is offensive, physically, to the senses and by such offensiveness makes life uncomfortable." *In re Chi. Flood Litig.*, 680 N.E.2d 265, 278 (Ill. 1997) (quotation marks omitted). "'Typical examples would be smoke, fumes, dust, vibration, or noise produced by defendant on his own land and impairing the use and enjoyment of neighboring land.'" *Id.* Yet the allegations here are that Ethylene Oxide is "an invisible, odorless" gas. JA43. "[A]bsent any perceptible element that would influence the physical senses," the underlying plaintiffs could not state a claim for private nuisance—which is presumably why they did not allege private nuisance in their master complaint. *Chi. Flood*, 680 N.E.2d at 278.

Even if the allegations could amount to a private nuisance, they do not amount to a "wrongful entry or eviction or other invasion of the right of private occupancy." JA231. As the district court recognized, the personal-injury inquiry must be "based on the allegations in the complaint,

not the legal labels attached to them." *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010). But the court overlooked that the master complaint does not contain *any* property-based allegations.

The district court's assertion that the master complaint alleges emissions of Ethylene Oxide "onto the plaintiffs' private property" finds no support in the complaint itself. RSA22. The master complaint contains no allegations *at all* about the plaintiffs' private property. JA39-157. It does not allege any interference with the use, development, or enjoyment of any private property. Nor does it allege any damages for property impacts, such as relocation or eviction. Instead, the master complaint alleges that Griffith and Sterigenics transgressed the "public right" to clean air, which resulted in bodily and economic injuries. JA121, 142.

The master complaint's lack of property-based allegations makes sense because the Underlying Lawsuits are not limited to plaintiffs who lived in Willowbrook. They also were brought by those who "worked" and attended "school" in the area. *E.g.*, JA67. Not all of those plaintiffs would have had private property rights to assert. And even those who did might

not have suffered injuries arising from any invasion of those property rights.

To be sure, it may well be that some of the underlying plaintiffs *could* have alleged property-based injuries—and some might have in their individual complaints. But Griffith and Sterigenics cannot have it both ways—if they want to litigate the duty to defend based solely on the master complaint, they have to live with the allegations in it. And those allegations do not assert a "personal injury."[4]

*Millers Mutual Insurance Association of Illinois v. Graham Oil Co.*, cited by the district court, illustrates the kinds of property-based allegations that *could* qualify for personal-injury coverage but which are absent here. The complaint there alleged "a sudden and calamitous spillage of a large quantity of gasoline," which caused "severe pollution and contamination of [the plaintiffs'] property." 668 N.E.2d 223, 226, 232 (Ill. App. Ct. 1996). The plaintiffs allegedly "noticed noxious and offensive gasoline odors on the parcel as a result of the spillage which led to their temporary

---

[4] The record does not reveal how many of the underlying plaintiffs lived in Willowbrook. Just as National Union cannot have a duty to defend suits alleging injuries occurring after 1985, it cannot have a duty to defend suits brought by plaintiffs who did not live in Willowbrook on the theory that the Ethylene Oxide emissions violated their "private right of occupancy." This is yet another prejudicial effect of the district court's erroneous choice to analyze the Underlying Lawsuits as one merged suit.

evacuation of the parcel." *Id.* at 226. And they claimed that "the contamination of the property resulted in a loss of rents and profits, loss of tenants, and diminution in value of their parcel." *Id.*

The master complaint here does not contain any comparable property-based allegations. That precludes personal-injury coverage, as it "is the actual complaint, not some hypothetical version, that must be considered." *Amerisure Mut. Ins. Co.*, 622 F.3d at 812.

The district court's expansive interpretation of personal-injury coverage also should be rejected because it would nullify the pollution exclusion. If the allegations of decades-long Ethylene-Oxide emissions here could be characterized as a "wrongful entry or eviction or other invasion of the right of private occupancy," then nearly every instance of traditional environmental pollution would be covered under the policies, despite the parties' clear intention to exclude pollution from coverage.

Finally, even if the master complaint contained property-based allegations, personal-injury coverage still would be precluded under the policies' penal-statute exclusion. The policies exclude from coverage "personal injury … arising out of the willful violation of a penal statute or ordinance." JA231. And the master complaint states that during the

policy periods Griffith failed to "comply with the Illinois Environmental Protection Act and its supporting regulations, which prohibit[] 'the emission of any contaminant into the environment so as to cause or tend to cause air pollution in Illinois.'" JA66-67; *see also* 415 Ill. Comp. Stat. Ann. 5/9(a).

The district court held the exclusion inapplicable because the underlying plaintiffs did not pursue claims under the Environmental Protection Act. RSA22. But that is irrelevant. What matters is whether the underlying "complaint alleges acts … which could violate" a penal statute, which the master complaint here plainly does. *Carney v. Vill. of Darien*, 60 F.3d 1273, 1280-81 (7th Cir. 1995) (applying exclusion despite lack of underlying claim under penal statute); *see also Nat'l Fire & Cas. Co. v. W. By & Through Norris*, 107 F.3d 531, 537 (7th Cir. 1997) (same).

### D. If The Court Has Any Doubt, It Should Certify These Questions To The Illinois Supreme Court.

For the foregoing reasons, National Union has no duty to defend the Underlying Lawsuits under Illinois law. But to the extent the Court believes that the state-law issues discussed in Parts II.A-II.C are unclear, National Union respectfully suggests certifying them to the Illinois Supreme Court. This Court can certify outcome-determinative "state-law

questions" to the Illinois Supreme Court when "none of its precedents control." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1165-66 (7th Cir. 2021); 7th Cir. R. 52(a).

Certification also could help mitigate the risk of inconsistent judgments. If this Court were to affirm the district court but the Illinois state court decided that the insurers have no duty to defend under Illinois law, National Union would face inconsistent judgments and may be unable to seek contribution from Griffith's and Sterigenics' other insurers. For that reason, as explained above, this case should be dismissed under Rule 19. *See supra* at 25-37. But short of that, certification would allow the Illinois Supreme Court to decide the duty-to-defend issue, binding both the state and federal courts.

## III. The District Court Erred By Rubber Stamping Sterigenics' Requests For Massive Damages.

At a minimum, the Court should remand for Sterigenics' damages to be properly determined. Sterigenics has claimed that it paid staggering amounts defending the Underlying Lawsuits—around $101 million in total, compared to Griffith's $22 million for defending the same litigation. Yet the district court simply presumed those defense costs were reasonable without engaging at all with National Union's arguments to

the contrary, ignoring major red flags in Sterigenics' requests. The district court erred both in invoking a presumption of reasonableness and in treating the presumption as irrebuttable.

*First*, Sterigenics' asserted defense costs are not entitled to a presumption of reasonableness. Under *Taco Bell Corp. v. Continental Casualty Co.*, a court can presume that litigation expenses were reasonable without "painstaking judicial review" only when an insured "ha[s] an incentive to minimize its legal expenses." 388 F.3d 1069, 1075-76 (7th Cir. 2004); *USA Gymnastics*, 46 F.4th at 582. Sterigenics had no such incentive.

The sheer amount of Sterigenics' litigation expenses is proof positive of that. *Taco Bell*'s presumption might make sense when defense costs are within the realm of reason, as in *Taco Bell* itself ($1.8 million), and *USA Gymnastics* ($3.18 million). But Sterigenics is seeking over *$101 million* in costs for defending the Underlying Lawsuits over 30 months. Griffith's claimed cost for the same litigation is about $22 million. RSA56.

Additional factors point in the same direction. As discussed below, Sterigenics refused to provide any meaningful details about its

exorbitant costs, raising doubts about whether they are market-disciplined. Sterigenics also failed to establish that it actually paid the costs. Sterigenics incurred the costs jointly with its parent company, Sotera Health LLC—and if Sotera was paying some or all of Sterigenics' bills, Sterigenics might not have had adequate incentive to minimize costs. *E.g.*, JA359, 380-81. Because Sterigenics' costs were not market tested, *Taco Bell* does not apply.

*Second*, the district court transformed *Taco Bell* from an evidentiary presumption into a rule of decision. Under *Taco Bell*, a court must provide an insurer the opportunity to meet its "burden of proof to show the attorneys' fees … were unreasonable or unnecessary." *USA Gymnastics*, 46 F.4th at 583. But the district court denied National Union *any* opportunity to show that Sterigenics' claimed costs were unreasonable.

In support of its first motion for $76 million in defense costs, Sterigenics submitted heavily redacted invoices containing almost no descriptive information. *E.g.*, JA358-78, 380-81. Almost all of the invoices were directed to Sterigenics' parent company, Sotera. Sterigenics also submitted affidavits promising the defense costs were correct and necessary, JA284, and a spreadsheet that listed the invoice dates, amounts, vendors,

and generic descriptions, JA542-59. For its second motion seeking an additional $26 million in defense costs, incurred over just 10 months, Sterigenics skipped the invoices and provided *only* an affidavit and vendor spreadsheet. JA578-82.

National Union objected that Sterigenics' meager submissions prevented it from attempting to rebut the *Taco Bell* presumption, and so requested additional discovery. It pointed out that, among other things, some of the payments could have been made for Sotera's, rather than Sterigenics', litigation expenses. National Union also provided a declaration in which an attorney retained to review the reasonableness of Sterigenics' requested costs explained why she could not do so based on the evidence provided. JA387-92. Yet the district court did not address National Union's arguments. Instead, it took Sterigenics' unsupported assertions at face value and approved Sterigenics' requested costs in full.

That was error. Even the sparse information not redacted in Sterigenics' bills reveals several reasons to doubt that Sterigenics' massive defense costs are fully recoverable. Most importantly, Sterigenics was jointly represented with its parent company, Sotera, in the Underlying Litigation, and almost all the legal invoices submitted as evidence of its

defense costs are addressed to Sotera, not Sterigenics. *See, e.g.*, JA359. A substantial portion of the legal expenses Sterigenics claims it spent could have been spent defending Sotera, which nobody claims National Union insured. At a minimum, Sterigenics should have been required to provide fully unredacted invoices to ensure that National Union is not paying legal expenses for an uninsured entity.

In addition, one of Sterigenics' law firms noted on its bills that the firm was also working on the Ethylene Oxide litigation against Sterigenics in Georgia and New Mexico. JA394-401. Some of those same bills also include categories that imply that the charges apply to all the related tort matters across jurisdictions, rather than just the Illinois litigation. JA394-401.

Moreover, that same firm and at least one of Sterigenics' other law firms charged flat fees. *See, e.g.*, JA379-86. There is no way of determining, based on the information Sterigenics provided, how much of those fees were attributable to defending Sotera, rather than Sterigenics, or to representing Sterigenics or Sotera in other jurisdictions. And some fees do appear to cover Ethylene-Oxide matters in other jurisdictions. JA382-86. As National Union pointed out, the district court had no way of

parsing the percentage of the flat fees that is appropriately allocated to the Illinois litigation. Purporting to apply *Taco Bell*, the district court did not attempt to do so.

Sterigenics' obfuscation contrasts sharply with Griffith's approach to defense costs. Griffith provided about 1,000 pages of invoices with far fewer redactions. *E.g.*, JA698-757. Although National Union disputed Griffith's costs on a number of grounds, it was at least possible for National Union to form those objections. Sterigenics, by contrast, has left National Union completely in the dark.

The pairing of costs of this magnitude with a total lack of transparency as to how the costs were incurred is precisely the kind of "special circumstance[]" that should have prodded the district court to "require additional information" from Sterigenics, as National Union urged. *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 775 (7th Cir. 2010); *see also USA Gymnastics*, 46 F.4th at 581; *id.* at 579-80 (applying de novo review to argument that district court "applied the wrong legal framework"). The district court erred in failing to do so.

**CONCLUSION**

This Court should reverse or vacate the district court's judgments with instructions for the district court to either dismiss these cases, render judgment for National Union, or conduct additional analysis on National Union's duty to defend and damages.

Dated:  April 11, 2024

Respectfully submitted,

   /s/ *Thomas H. Dupree Jr.*

Thomas H. Dupree Jr.
Nick Harper
Aaron Hauptman
Aly Cox
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
tdupree@gibsondunn.com

**CERTIFICATE OF COMPLIANCE**

The undersigned attorney hereby certifies that the foregoing complies with the type-volume limitations of Rule 32(a)(7)(B) and Circuit Rule 32(c).  The brief contains 13,932 words, excluding the parts of the brief exempted by Rule 32(f).  This document complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5)-(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point New Century Schoolbook font.

*/s/ Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 11, 2024, an electronic copy of the foregoing was filed with the Clerk of Court for the United States Court of Appeals for the Seventh Circuit using the Clerk's CM/ECF system, which will accomplish service on all participants in the case that are registered CM/ECF users.

/s/ *Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

Nos. 24-1217 & 24-1223

# In the United States Court of Appeals for the Seventh Circuit

GRIFFITH FOODS INTERNATIONAL INC. f/k/a GRIFFITH LABORATORIES U.S.A., INC., AND GRIFFITH FOODS GROUP INC. f/k/a GRIFFITH LABORATORIES, INC.,

*Plaintiffs-Appellees*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellant*.

STERIGENICS, U.S., LLC,

*Plaintiff-Appellee*,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.,

*Defendant-Appellant*.

On Appeal from the United States District Court
for the Northern District of Illinois
Case Nos. 1:21-cv-4581, 1:21-cv-6403

## REQUIRED SHORT APPENDIX

Thomas H. Dupree Jr.
Nick Harper
Aaron Hauptman
Aly Cox
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
(202) 955-8500
tdupree@gibsondunn.com

*Attorneys for National Union Fire
Insurance Co. of Pittsburgh, Pa.*

# TABLE OF CONTENTS

Page

Memorandum Opinion and Order on Duty to Defend
(*Sterigenics* ECF 40 Aug. 3, 2022)...................................................RSA1

Memorandum Opinion and Order Denying National Union's
Motions and Granting Griffith's and Sterigenics' Motions
(*Sterigenics* ECF 98 July 25, 2023)..............................................RSA30

Judgment (*Sterigenics* ECF 100 July 25, 2023)..............................RSA51

Judgment (*Griffith* ECF 91 July 25, 2023).....................................RSA52

Amended Judgment (*Sterigenics* ECF 134 Jan. 11, 2024) ..............RSA53

Amended Judgment (*Griffith* ECF 119 Jan. 11, 2024)....................RSA55

Pursuant to Seventh Circuit Rule 30(d), I hereby certify that all the materials required by Seventh Circuit Rule 30(a) and (b) are included in this Required Short Appendix and the Joint Appendix.

*/s/ Thomas H. Dupree Jr.*
Thomas H. Dupree Jr.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sterigenics, U.S., LLC, | |
| Plaintiff, | Case No. 21-cv-4581 |
| v. | |
| National Union Fire Insurance Company Of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |
| Griffith Foods International, Inc., et al., | |
| Plaintiffs, | Case No. 21-cv-6403 |
| v. | |
| National Union Fire Insurance Company of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

In this insurance coverage dispute, Plaintiff Sterigenics U.S., LLC and Plaintiffs Griffith Foods International, Inc. and Griffith Foods Group, Inc. have brought separate but related lawsuits against their insurer, National Union Fire Insurance Company of Pittsburgh, P.A. Plaintiffs seek judgments declaring that National Union owes them duties to defend and indemnify them in an underlying

**RSA1**

action pending in Illinois state court. Sterigenics and the Griffith Plaintiffs have moved for partial judgment on the pleadings, requesting a judgment that National Union owes them a duty to defend. The Griffith Plaintiffs have also moved for judgment on their claims for breach of the duty to defend and estoppel. National Union has cross-moved for judgment on the pleadings. For the reasons explained below, this Court grants Sterigenics' and the Griffith Plaintiffs' motions as they pertain to the duty to defend, denies the Griffith Plaintiffs' motion as to estoppel, and denies National Union's motions except as it pertains to estoppel.

## I.     Background

This Court accepts as true the following facts from the amended complaint in the Sterigenics case and the complaint in the Griffith case. *See Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). Because Plaintiffs' complaints contain similar allegations and concern the same insurance policies, this Court will sometimes cite to one complaint for a proposition that applies to both Plaintiffs. Unless otherwise indicated, citations to docket numbers refer to filings in Sterigenics' case.

### A.     Underlying Litigation and the Policies

In Illinois state court, multiple plaintiffs have sued several defendants, including two of the Plaintiffs here—Sterigenics and Griffith Food International, Inc., formerly known as Griffith Laboratories U.S.A., Inc. (hereinafter Griffith Labs). [15] ¶¶ 13, 16. The underlying litigation, entitled *In re: Willowbrook Ethylene Oxide Litigation*, is currently pending in the Circuit Court of Cook County, Illinois. [15-1].

**RSA2**

In the (operative) fourth amended complaint, the underlying plaintiffs allege that they suffered bodily and personal injuries as a result of exposure to discharges of ethylene oxide (EtO) from sterilization facilities Sterigenics currently owns in Willowbrook, Illinois. [15] ¶ 14. The fourth amended complaint serves as the master complaint for hundreds of actions which the state court consolidated for pretrial and discovery purposes; its allegations concern each named plaintiff. *Id.* ¶ 14 & n.2.

The underlying plaintiffs assert that, in 1984, Griffith Labs "purposely directed" that an EtO sterilization facility be located in the plaintiffs' residential community, knowing the facility would endanger the community's health and safety; the plaintiffs also assert that Griffith Labs operated the facility for the next fifteen years without adequately protecting the plaintiffs from the facility's carcinogenic emissions. [15-1] ¶ 7. Griffith Labs operated the Willowbrook facility "[d]uring certain times prior to May 14, 1999," according to the underlying complaint. *Id.* ¶ 24.[1] The underlying complaint also alleges that "Defendant Sterigenics U.S., under its current name and previously under other names, operated EtO sterilization facilities at 7775 Quincy Street in Willowbrook, Illinois . . . and 830 Midway Drive in Willowbrook, Illinois, continuously and at all relevant times." *Id.* ¶ 22. The underlying complaint asserts state-law claims against Sterigenics and Griffith Labs for negligence, negligent training, negligent supervision, willful and wanton conduct, strict liability, civil battery, and public nuisance. [15-1].

---

[1] Prior iterations of the underlying complaint—the second and third amended complaints—named Griffith Foods Group Inc., the other Plaintiff in the Griffith suit (hereinafter Griffith Foods). Griffith [1] ¶¶ 19, 23. Griffith Foods is formerly known as Griffith Laboratories, Inc. *Id.* ¶ 1.

**RSA3**

### B.     Policies' Provisions

The parties' dispute centers around two commercial general liability policies that National Union insures. [15] ¶ 17. Policy number GLA-945-70-58RA was effective from September 30, 1983 to September 30, 1984; policy number GLA-194-00-11RA was effective from September 30, 1984 to September 30, 1985. *Id.*

The Policies' insuring agreement provides coverage for "bodily injury" or "property damage":

> The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

[25-1] at 6; [25-2] at 12. Exclusion (f) of the Policies—the Pollution Exclusion—states:

> Coverage A and B are subject to exclusion (f), which precludes coverage for:
>
> [] bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

[25-1] at 6; [25-2] at 12.

4

**RSA4**

The Policies also provide coverage for "personal injury," as follows:

Personal Injury and Advertising Injury Liability Coverage

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury, even if any of the allegations of the suit are groundless, false or fraudulent. . .

'Personal injury,' in relevant part, means injury arising out of one or more of the following offenses committed during the policy period of the following offenses committed during the policy period:

* * *
2.      wrongful entry or eviction or other invasion of the right of private occupancy;

[25-1] at 7; [25-2] at 6.

The Policies contain an endorsement stating that the term "Named Insured"

means:

[T]he organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability. Such insurance as may be afforded and *[sic]* newly acquired or formed company shall terminate within sixty days of its acquisition of *[sic]* formation unless reported to the company within said sixty days.

[25-1] at 16; [25-2] at 15.

Item 1 of the Policies' declarations pages identifies "Griffith Laboratories, Inc."

and "Griffith Laboratories U.S.A., Inc." (the Griffith Plaintiffs, under their former names) as the named insureds. *Id.* ¶ 20.

### C. National Union Denies Coverage

In February 2021, Sterigenics tendered the underlying litigation to National Union for defense and indemnity coverage. [15] ¶ 52. National Union denied coverage on the grounds that Sterigenics is not insured under the Policies and that the Pollution Exclusion precludes coverage. *Id.* ¶¶ 53, 55. National Union similarly denied coverage to the Griffith Plaintiffs after they provided notice to it of the third amended underlying complaint. Griffith [1] ¶¶ 31, 34.

After National Union denied coverage, Sterigenics and the Griffith Plaintiffs brought separate suits against National Union in this district; the Sterigenics case was initially assigned to this Court. Upon National Union's unopposed motion, this Court deemed the suits related and the Executive Committee reassigned the case to this Court. [30]. In its amended complaint, Sterigenics seeks a judgment declaring that National Union possesses a duty to defend (Count I) and a duty to indemnify (Count II), as well as damages resulting from National Union's alleged breach of the Policies (Count III). [15] ¶¶ 57–82. The Griffith Plaintiffs assert claims for breach of contract based on National Union's refusal to defend (Counts I and II); they also a seek declaratory judgment ordering National Union to defend and indemnify and estopping National Union from asserting coverage defenses (Counts III and IV). Griffith [1] ¶¶ 49–78.

Sterigenics moves under Rule 12(c) for partial judgment on Counts I and III,

as to National Union's duty to defend, [24]; National Union cross-moves for entry of judgment on all counts against Sterigenics, [31]. In the Griffith case, the Griffith Plaintiffs move pursuant to Rule 12(c) for judgment on Counts I and II for breach of contract with respect to the duty to defend and on Counts III and IV for a declaration that National Union has a duty to defend and that National Union is estopped from raising coverage defenses. Griffith [15]. National Union cross-moves against the Griffith Plaintiffs for judgment on all counts. Griffith [23].

## II.    Legal Standard

Rule 12(c) permits a party to move for judgment solely on the pleadings. Fed. R. Civ. P. 12(c). Pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312–13 (7th Cir. 2020). This Court reviews Rule 12(c) motions under the same standards as a motion to dismiss under Rule 12(b)(6). *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 867 (7th Cir. 2021); *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015). Accordingly, this Court takes all facts pleaded in the amended complaint as true and draws all reasonable inferences and facts in favor of the nonmoving party. *Mesa*, 994 F.3d at 867.

## III.    Analysis

Before addressing the parties' legal arguments, this Court notes that all parties agree that Illinois law applies to the construction of the Policies. Under Illinois law, the interpretation of an insurance policy, like any other contract, is a question of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir.

2021). This Court construes insurance policies as a whole, "giving effect to every provision if possible." *Melcorp, Inc. v. W. Am. Ins. Co.*, No. 21-2448, --- F.4th ----, 2022 WL 2068256, at *1 (7th Cir. June 8, 2022) (quoting *Paradigm Care & Enrichment Center, LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 420 (7th Cir. 2022)). Policy terms "that are 'clear and unambiguous' must be given their 'plain and ordinary meaning.'" *Mashallah*, 20 F.4th at 319 (quoting *Sanders v. Ill. Union Ins. Co.*, 157 N.E.3d 463, 467 (Ill. 2019)).

### A.    The Duty to Defend

This Court first considers whether National Union owes Sterigenics and the Griffith Plaintiffs a duty to defend in the underlying lawsuit. Illinois law "recognizes that the insurer's duty to defend arises when the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions." *Liberty Mut. Fire Ins. Co. v. Clayton*, 33 F.4th 442, 447 (7th Cir. 2022) (internal quotation omitted). The duty to defend is generally broader than the duty to indemnify "because it arises in cases of arguable or potential coverage," while the duty to indemnify "arises only in circumstances of *actual* coverage." *Id.* (quoting *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006)). To determine whether insurer's duty to defend has arisen, the Court compares the allegations of the underlying complaint to the policy language. *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, No. 21 C 788, 2022 WL 954603, at *3 (N.D. Ill. Mar. 30, 2022) (citing *Metzger v. Country Mut. Ins. Co.*, 986 N.E.2d 756, 761 (Ill. App. Ct. 2013)). This is known as the "eight corners rule," meaning that the duty to

**RSA8**

defend depends on a comparison between the four corners of the insurance policy and the four corners of the complaint for which defense is sought. *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 579–80 (7th Cir. 2021).

The duty to defend arises where the "allegations of the underlying complaint potentially assert a claim within the liability coverage of the policy." *Id.* at 580; *see also Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021) ("If the facts alleged in the complaint fall within, or potentially fall within, the policy coverage, the insurer must defend the insured."). This Court resolves any doubts about the duty to defend and liberally construes policy terms and the underlying complaint's allegations in the insured's favor. *Am Bankers*, 3 F.4th at 327; *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021).

### 1. Named Insured

Initially, there is no dispute that the Griffith Plaintiffs qualify as "named insureds" under the Policies. National Union argues that Sterigenics fails to qualify as an insured under the Policies and therefore cannot avail itself of their benefits. This Court disagrees; Sterigenics is a "named insured" for the purposes of National Union's duty to defend.

Both Policies contain an endorsement providing that the term "Named Insured" means:

> [T]he organization, including any subsidiary thereof, named in item 1 of the declarations and also includes any other company which is acquired or formed by the named insured during the policy period and over which the named insured maintains ownership or financial control, provided this insurance does not apply to any such newly acquired or formed company which is an insured under any other

9

**RSA9**

liability or indemnity policy or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability.

[15] ¶ 18. Item 1 of the Policies' declarations pages identifies Griffith Labs as one of the named insureds. *Id.* ¶ 20. Thus, under the Policies' plain language, any subsidiary of or any other company acquired or formed by Griffith Labs also qualifies as a named insured under the Policies.

The underlying fourth amended complaint's allegations trigger Sterigenics' status as a named insured because it attempts to hold Sterigenics liable for its own and its predecessor's acts. The complaint alleges that on "October 4, 1984, Griffith Labs formed a nominal corporate subsidiary, Micro Biotrol Company (MBC)," [15-1] ¶ 105. This allegation establishes that MBC is also a "named insured" under the Policies due to its status as a subsidiary of Griffith Labs. The underlying complaint next alleges that:

22. "Defendant Sterigenics U.S., under its current name and previously under other names, operated EtO sterilization facilities at 7775 Quincy Street in Willowbrook, Illinois . . . and 830 Midway Drive in Willowbrook, Illinois, continuously and at all relevant times.

23. Sterigenics U.S.'s predecessors who operated the Willowbrook facilities include: Micro-Biotrol Company, Micro-Biotrol, Inc., Griffith Micro Science, Inc., IBA S&I, Inc., and Sterigenics EO, Inc. Through a series of acquisitions, mergers, and name changes, Sterigenics U.S. has assumed the liabilities of these predecessor entities for their respective involvement in the operation of the Willowbrook facilities. (Sterigenics U.S. and its predecessors are referred to collectively herein as 'Sterigenics U.S.')

[15-1] ¶¶ 22, 23. Read in combination, these allegations establish that Sterigenics became the successor entity to MBC, a named insured, through a series of corporate

10

**RSA10**

transactions, including by acquisition, merger, and name change. The allegation that Sterigenics is MBC's successor raises at least the "possibility" that Sterigenics is covered as a "named insured." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 816 (7th Cir. 2010) (quoting *Health Care Industry Liability Ins. Program v. Momence Meadows,* 566 F.3d 689, 696 & n.9 (7th Cir.2009)); *see, e.g.*, *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 829 F.3d 509, 515 (7th Cir. 2016) (concluding that, under a reading of the underlying complaint, that a party qualified as a named insured).

This conclusion is supported by general principles of corporate law. Once "a merger is established, the successor corporation takes on the obligations and liabilities under the insurance policies." *Knoll Pharm. Co. v. Auto. Ins. Co.*, 167 F. Supp. 2d 1004, 1010 (N.D. Ill. 2001); *see also Kaleta v. Whittaker Corp.*, 583 N.E.2d 567, 570 (Ill. App. Ct. 1991) (noting that "the general rule is that a corporation that merges with another corporation takes on the latter corporation's obligations and liabilities"); *accord Cont'l Ins. Co. v. Daikin Applied Americas Inc.*, 998 F.3d 356, 361 (8th Cir. 2021) (noting that, under Minnesota law, "a surviving corporation may assert claims under insurance policies issued to an acquired company for pre-merger liabilities of the acquired company, even though the survivor was not named on the policy.") (quotation omitted). Similarly, "a corporation that simply changes its name retains the rights and liabilities it possessed prior to the identity switch." *Gen. Elec. Bus. Fin. Servs. Inc. v. Hedenberg*, No. 10 C 5094, 2011 WL 1337105, at *2 (N.D. Ill. Apr. 7, 2011).

National Union argues that whether Sterigenics qualifies as an insured cannot be determined by the underlying complaint allegations and that "numerous fact issues" preclude judgment on this issue. [32] at 10–16. To that end, National Union dedicates much of its briefing questioning whether Sterigenics, in fact, is a corporate successor of MBC, and whether it in fact inherited MBC's insurance protections. These arguments are misplaced because "the duty to defend is gauged by the allegations of the complaint," and "what the facts subsequently show is immaterial." *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 75 F. Supp. 3d 833, 841 (N.D. Ill. 2014) (quoting *In re Country Mut. Ins. Co.*, 889 N.E.2d 209, 210 (Ill. 2007)), *aff'd*, 829 F.3d 509 (7th Cir. 2016). Even if the underlying complaint's allegations "are groundless, false or fraudulent, the insurer is obligated to defend." *United Fire & Cas. Co. v. Prate Roofing & Installations, LLC*, 7 F.4th 573, 581 (7th Cir. 2021) (quoting 14 Couch on Insurance § 200:20). The Seventh Circuit has emphasized that "the bar to finding a duty to defend is low." *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 722 (7th Cir. 2015). The underlying complaint's allegations raise at least the possibility that Sterigenics constitutes a "named insured" under the Policies as MBC's successor.

### 2.    Bodily Injury

Next, there is no dispute that the operative fourth amended complaint in the underlying litigation alleges a covered "bodily injury" as defined under the Policies.

The Policies provide:

The company will pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of

A. bodily injury or

B. property damage

to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

[25-1] at 6; [25-2] at 12. The underlying complaint seeks damages from Griffith Labs and Sterigenics based on allegations that they caused the underlying plaintiffs to breathe excessive and dangerous amounts of EtO, causing them serious—and sometimes fatal—diseases or conditions. [15-1] ¶ 13. These allegations plainly trigger "bodily injury" coverage under the Policies—a point that National Union concedes. [32] at 6–7; Griffith [28] at 1.

### 3. Pollution Exclusion

Although National Union concedes that the underlying fourth amended complaint alleges "bodily injury" under the Policies, it argues that the Pollution exclusion excuses its obligation to defend Sterigenics and Griffith Labs from those allegations in the underlying litigation. An insured's claim can fall outside of a policy's coverage if it falls "*within* an exclusion." *Mesa Lab'ys, Inc. v. Fed. Ins. Co.*, 994 F.3d 865, 868 (7th Cir. 2021). But "a decision to excuse an insurer's duty to defend based on an exclusionary clause in the contract 'must be clear and free from doubt.'" *Zurich Am. Ins. Co. v. Ocwen Fin. Corp.*, 990 F.3d 1073, 1078 (7th Cir. 2021) (quoting *Evergreen Real Estate Servs., LLC v. Hanover Ins. Co.*, 142 N.E.3d 880, 887 (Ill. App. Ct. 2019)).

**RSA13**

Exclusion (f) of the Policies—the Pollution Exclusion—states:

Coverage A and B are subject to exclusion (f), which precludes coverage for:

[] *bodily injury or property damage* arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental*[.]

[25-1] at 6 (emphasis added); [25-2] at 12 (emphasis added).

In Illinois, courts restrict pollution exclusions to "only hazards traditionally associated with environmental pollution." *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*, 37 F.4th 440, 444 (7th Cir. 2022) (citing *Am. States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997)). National Union argues that the Pollution Exclusion bars coverage because the underlying fourth amended complaint asserts that the plaintiffs have sustained severe injuries stemming from traditional environmental pollution—namely, the emissions of EtO, a toxic and poisonous chemical that has been classified as a carcinogenic and a "priority pollutant." [15-1] ¶¶ 13, 44, 46, 128. This Court disagrees and concludes that the Pollution Exclusion is inapplicable for two reasons.

First, the Pollution Exclusion is ambiguous as to whether it applies to permitted emissions like the ones alleged in the underlying complaint. In *Erie Insurance Exchange v. Imperial Marble Corp.*, the Illinois Appellate Court construed a similar pollution exclusion to the one here barring coverage for bodily injury of property damage "arising out the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants." 957 N.E.2d 1214,

14

**RSA14**

1220 (Ill. App. Ct. 2011) (internal quotation marks omitted). The policy in *Imperial Marble* defined "pollutants" as any "solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical, and waste." *Id.* at 1220–21. The insured argued that the alleged emissions it made did not qualify as traditional environmental pollution because those emissions were made pursuant to a permit issued by the Illinois Environmental Protection Agency (IEPA). *Id.* at 1221. Reasoning that pollution exclusions have "potentially limitless application," the appellate court found the pollution exclusion "arguably ambiguous as to whether the emission of hazardous materials in levels permitted by an IEPA permit constitute traditional environmental pollution excluded under the policy." *Id.* at 1221 (internal quotation omitted). Thus, construing the ambiguity in favor of the insured, the court held that the pollution exclusion did not apply and that the insurer owed the insured a duty to defend. *Id.*; *see also Country Mut. Ins. Co. v. Bible Pork, Inc.,* 42 N.E.3d 958, 961, 970 (Ill. App. Ct. 2015) (finding a similar pollution exclusion ambiguous as to whether it applied to emissions from a hog factory which operated under state regulations and permits).

The same reasoning applies here. The underlying fourth amended complaint alleges that the IEPA issued Griffith Labs a two-year permit, beginning in July 1984 (during the first Policy period) and expiring on July 31, 1986 (after the expiration of the Policies' periods). [15-1] ¶¶ 57–58. According to the underlying complaint, the IEPA permit made Griffith Labs responsible for "sterilization processes for the six chambers for which it received a permit," "emissions of EtO

and other volatile organic materials from the facility," and "ensuring that its emissions and emission controls were compliant with local, state and federal law." *Id.* ¶ 60. The underlying complaint similarly attempts to hold Sterigenics liable for negligence due its management of the Willowbrook facilities, including for its emission of "massive and unnecessary amounts of" the permitted "EtO into the air from the Willowbrook facilities." *Id.* ¶ 220. As in *Imperial Marble*, this Court finds that the Pollution Exclusion is ambiguous as to whether emission of EtO under an IEPA permit qualifies as a traditional environmental pollution under the Policies. Because the Pollution Exclusion's application is not "clear and free from doubt," it cannot excuse National Union from its defense obligations. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (7th Cir. 2015) (quoting *Hurst–Rosche Eng'rs, Inc. v. Commercial Union Ins. Co.,* 51 F.3d 1336, 1342 (7th Cir. 1995)).

In addition, even if EtO emissions qualify as the type of traditional environmental pollution recognized under Illinois jurisprudence, the Pollution Exclusion itself contains an exception that reinstates coverage for Sterigenics. That is, the Pollution Exclusion "does not apply if such discharge, discharge dispersal, release or escape is sudden and accidental." [25-1] at 6; [25-2] at 12. In interpreting a similar "sudden" and "accidental" pollution exception to a pollution exclusion, the Illinois Supreme Court has held that the term "sudden" in pollution exclusions to be ambiguous and has construed the term "in favor of the insured to mean unexpected or unintended." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1220 (Ill. 1992). Additionally, courts construe the term "accident" in the context of

CGL policies as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688–89 (7th Cir. 2008) (quoting *Westfield Nat'l Ins. Co. v. Cont'l Cmty. Bank & Trust Co.,* 804 N.E.2d 601, 605 (Ill. App. Ct. 2003)); *see also Westfield Ins. Co. v. Zaremba Builders II LLC*, No. 19-CV-00794, 2022 WL 614938, at *5 (N.D. Ill. Mar. 2, 2022) (using the same definition). The underlying fourth amended complaint triggers the "sudden and accidental" exception to the Pollution Exclusion for Sterigenics because it alleges that Sterigenics' negligence resulted in "unintended leaks, spills, or emissions." [15-1] ¶¶ 225, 230. The "unintended" nature of the alleged leaks, spills, or emissions fit squarely within the definitions of "sudden" and "accidental," as interpreted by Illinois courts.

National Union counters that the underlying complaint, read as a whole, paints the picture that the "EtO emissions were a common, recurring, expected and intended aspect of the business," rather than sudden and accidental occurrences. [32] at 23. True, the underlying plaintiffs allege that the Willowbrook facilities' failure to control emissions resulted in "unnecessary emission of EtO into the surrounding community of at least 25,000 pounds each year of at least 400,000 pounds between 1984 and 1999," and that the facilities "operated 24 hours a day, emitting toxic, cancerous gas on a steady and continuous basis." [15-1] ¶¶ 86, 141. These allegations suggest, as National Union argues, that the emissions were routine and recurring, and not "sudden" nor "accidental." But "if several theories of

recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy." *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 774 (7th Cir. 2016) (quoting *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005)). Here, in addition to alleging that EtO emissions were continuous and routine, the underlying plaintiffs also allege that the emissions were unintended and unexpected. The latter theory is all that is needed to trigger the "sudden and accidental" exception.

National Union's citation to *Fruit of the Loom, Inc. v. Travelers Indemnity Co.* does not alter this Court's conclusion. *Contra* [38] at 6. In *Fruit of the Loom*, the Illinois appellate court considered the "sudden and accidental" exception in the context of an insured's discharge of liquid polychlorinated biphenyls (PCBs) in the mid-1950s to the late 1970s. 672 N.E.2d 278, 280 (Ill. App. Ct. 1996). There, the court held that the exception did not apply where the undisputed facts showed that, even though accidental spills occurred, those accidents occurred with regularity and were expected by the insured in the "ordinary course of business." *Id.* at 287–88. An employee testified, for example, that "PDB drippage occurred all the time; it was an ongoing problem to keep certain areas clean." *Id.* at 281. Unlike this case, the *Fruit of the Loom* court determined coverage on a full evidentiary record and determined that, although accidents occurred, they were not unexpected. Here, in contrast, this Court construes only the allegations of the underlying complaint in considering the duty to defend and it does so liberally in favor of coverage. *Am Bankers*, 3 F.4th at

327; *Zurich Am. Ins.*, 990 F.3d at 1078. Because the underlying complaint contains allegations that Sterigenics is liable for "unintended leaks, spills, or emissions," [15-1] ¶¶ 225, 230, it triggers the "sudden and accidental" exception to the Pollution Exclusion for Sterigenics.

### 4.    Personal Injury Coverage

Sterigenics and the Griffith Labs also contend that National Union must defend them under the "personal injury" coverage provision of the Policies, to which the Pollution Exclusion does not apply. [25] at 26; Griffith [25] at 14–16. National Union does not dispute that the Pollution Exclusion is inapplicable to "personal injury" coverage. *See generally* [32]; [38]. Instead, National Union disputes that the underlying complaint does not allege any covered "personal injury."

The personal injury coverage provision provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the named insured's business, within the policy territory. . . .

> "Personal injury," in relevant part, means injury arising out of one or more of the following offenses committed during the policy period of the following offenses committed during the policy period:

> \* \* \*
> 2.      wrongful entry or eviction or other invasion of the right of private occupancy;

[25-1] at 7; [25-2] at 6.

This Court agrees with Plaintiffs that the underlying fourth amended complaint alleges injuries that fall under the definition of "personal injury" under

the Policies. Under Illinois law, private nuisance claims trigger "personal injury" coverage because they entail a "wrongful entry or eviction or other invasion of the right of private occupancy." *Admiral Indem. Co. v. 899 Plymouth Ct. Condo. Ass'n D&kK Real Est. Serv. Corp.*, No. 16 C 5085, 2017 WL 345559, at *7 (N.D. Ill. Jan. 24, 2017) (quoting *Great Am. Ins. Co. of N.Y. v. Helwig*, 419 F. Supp. 2d 1017, 1025 (N.D. Ill. 2006)). A private nuisance "is a substantial invasion of another's interest in the use and enjoyment of his or her land." *Martinez v. City of Chicago*, 534 F. Supp. 3d 936, 953 (N.D. Ill. 2021) (quoting *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 204 (Ill. 1997)). Allegations "that the defendant's conduct threatens the plaintiff's land with environmental contamination . . . sufficiently state a nuisance claim." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 825 (N.D. Ill. 2014); *see also Lewis v. 300 W. LLC.*, No. 18-CV-50186, 2019 WL 4750313, at *11 (N.D. Ill. Sept. 30, 2019) (allegations that environmental contamination substantially interfered with the plaintiffs' reasonable use, development, and enjoyment of their property adequately stated a private nuisance claim).

The underlying complaint asserts that Sterigenics and Griffith Labs have threatened the underlying plaintiffs' land with environmental contamination. In Counts VII, the underlying plaintiffs assert that Sterigenics' "use and emission of EtO from the facilities . . . caused those who lived and worked in the area surrounding the facilities to inhale high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer." [15-1] ¶ 253. Similarly, Count XVIII alleges that the activities of "Griffith

**RSA20**

Labs . . . caus[ed] those who lived and worked in the area surrounding the facilities to inhale high levels of EtO on a routine and constant basis, and further, to be exposed to air causing a substantially elevated risk of cancer." *Id.* ¶ 318. These allegations that Sterigenics and Griffith Labs have threatened the underlying Plaintiffs' enjoyment and use of land with environmental contamination state a private nuisance claim and thus fall under the definition of "personal injury" under the Policies. *See, e.g., Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co.*, N.E.2d 223, 231 (Ill. App. Ct. 1996) (concluding that facts alleging "the unauthorized seepage and migration of gasoline onto the property of an adjoining neighbor[] were sufficient to bring the underlying complaint within the personal injury coverage of the policies").

National Union argues that the underlying complaint does not trigger "personal injury" coverage because the underlying plaintiffs have labeled Counts VII and XVIII "public nuisance" and not "private nuisance." [32] at 24. Legal labels are not dispositive. *See Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010) (noting that the court's inquiry on a duty to defend claim "is based on the allegations in the complaint, not the legal labels attached to them"). Further, when the "nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one." *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1282–83 (Ill. App. Ct. 2005) (quoting Restatement (Second) of Torts § 821C, Comment *e,* at 96 (1979)). As discussed, the underlying complaint contains

allegations that Sterigenics and Griffith Labs emitted carcinogenics onto the plaintiffs' private property. Thus, even though the underlying plaintiffs have labeled those counts as "public nuisance" claims, the facts they have alleged also "potentially give rise to" a private nuisance claim, and thus fall within the Policies' "personal injury" coverage. *Santa's Best Craft*, 611 F.3d at 346; *see Liberty Mut.*, 33 F.4th at 447 (instructing that the duty to defend arises when the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage provisions).

National Union also argues that the Policies preclude coverage for "personal injury" arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured. [32] at 28; *see* [25-1] at 7 (excluding from coverage "personal injury or advertising injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of the insured"); [25-2] at 6 (same). This argument is unpersuasive. The underlying complaint does not allege any statutory violation; it alleges common law causes of action. *See generally* [15-1]. To be sure, the underlying fourth amended complaint contains a reference to the Illinois Environmental Protection Act. *See* [15-1] ¶ 72 (alleging that "Griffith Labs was obligated to comply with the Illinois Environmental Protection Act and its supporting regulations, which prohibited 'the emission of any contaminant into the environment so as to cause or tend to cause air pollution in Illinois. . . '"). But the Act is not the basis for any of the plaintiffs' claims. National Union has not demonstrated that an exclusion to the "personal injury"

**RSA22**

coverage provision applies. In sum, the underlying complaint's private nuisance allegations trigger the "personal injury" coverage provisions in the Policies, thus providing another independent basis for National Union's duty to defend. *See Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 884 (7th Cir. 2017) (observing that "where insurer has duty to defend against at least one count of underlying lawsuit, it must then defend against all counts").

## 5. National Union Owes a Duty to Defend

As explained above, the underlying fourth amended complaint alleges bodily injury and personal injury that triggers coverage under the Policies, and National Union has not met its burden in demonstrating that any exclusions apply. Accordingly, this Court concludes that National Union owes Sterigenics and Griffith Labs a duty to defend based on the underlying fourth amended complaint.

The Griffith Plaintiffs also point out that although Griffith Foods is not named as a defendant in the fourth amended underlying complaint, it was named as a defendant in a prior iteration of the underlying complaint—the second amended underlying complaint. Griffith [19] at 15–16. Griffith Foods argues that, at a minimum, National Union owes it defense costs for the time that Griffith Foods was on the hook in the underlying case. *Id.* But this argument is undeveloped (indeed, Griffith Foods devotes only two sentences to it), and neither side engages in any substantive analysis regarding National Union's defense obligations under prior versions of the underlying complaint; instead, the parties' briefs focus on National Union's defense obligations under the fourth amended complaint. "When a party has

**RSA23**

more than ample opportunity to present an argument but raises it in a perfunctory manner, it should not expect more than perfunctory consideration from the district court." *Williams v. Dieball*, 724 F.3d 957, 963 (7th Cir. 2013). Because the parties have not sufficiently raised these issues before this Court, this this Court denies without prejudice Griffith Foods' request for defense costs arising from prior versions of the underlying complaint.[2]

### B. Estoppel

The Griffith Plaintiffs also ask this Court to enter judgment declaring that National Union is estopped from asserting policy defenses to coverage. National Union, for its part, requests a determination that estoppel is inapplicable.

Under Illinois law, when "an insurer learns of a claim against its insured, the ball is in the insurer's court." *Title Indus.*, 853 F.3d at 891. When a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and the insurer takes the position that the policy does not cover the underlying complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment of non-coverage. *Essex Ins. Co. v. Blue Moon Lofts Condo. Ass'n*, 927 F.3d 1007, 1012 (7th Cir. 2019). If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer breaches its duty to defend and is estopped from asserting policy defenses to

---

[2] This Court also notes that, although Griffith Foods relies on the second amended complaint in arguing that National Union owed it a defense, the insurer's duty to defend only arises upon "actual notice of the underlying suit." *Cincinnati Cos. v. W. Am. Ins. Co.*, 701 N.E.2d 499, 505 (Ill. 1998). Here, Griffith Foods alleges that National Union received actual notice when it received the *third* amended complaint, not the second amended complaint. Griffith [1] ¶ 31. Thus, to the extent National Union owes Griffith Foods any defense costs, those costs ostensibly would arise only after Griffith Foods provided notice to National Union of the *third* amended complaint.

**RSA24**

coverage. *Santa's Best Craft*, 611 F.3d at 349; *Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 708 N.E.2d 1122, 1135 (Ill. 1999); *see also Title Indus.*, 853 F.3d at 892 (observing that an "insurer that breaches its duty to defend and abandons its insured is estopped from later invoking policy defenses to indemnity"). To avoid estoppel, the insurer must take one of the above steps—defend under a reservation of rights or seek declaratory judgment—"within a reasonable time of a demand by the insured." *Nautilus Ins. Co. v. Bd. of Directors of Regal Lofts Condo. Ass'n*, 764 F.3d 726, 733 (7th Cir. 2014) (quoting *Korte Constr. Co. v. Am. States Ins.,* 750 N.E.2d 764, 770 (Ill. App. Ct. 2001)).

On January 29, 2021, the Griffith Plaintiffs provided National Union with notice of the underlying suit and provided copies of the (then-operative) third amended complaint. Griffith Compl. [1] ¶ 31.[3] On February 17, 2021, National Union acknowledged receipt of the notice and requested copies of the Policies, which the Griffith Plaintiffs provided the same day. *Id.* ¶ 32. National Union ultimately denied coverage on October 12, 2021. *Id.* ¶ 33. Shortly after, on November 30, 2021, the Griffith Plaintiffs filed this declaratory judgment action, and shortly after that, on January 31, 2022, National Union answered and asserted affirmative defenses. *See* Griffith [1]; [11]. In its answer and affirmative defenses, National Union explicitly denies coverage and "requests that this Court find and declare that Plaintiffs are not entitled to any relief." [11] at 11. Thus, about one year transpired between the

---

[3] The parties assume, without discussing, that the third amended complaint's allegations were sufficiently similar to the fourth amended complaint's allegations, such that if the latter triggered National Union's duty to defend, the former would have, too.

Griffith Plaintiffs' tender of the underlying litigation and National Union's request for a declaration of non-coverage. *See Sentinel Ins. Co. v. Walsh Constr. Co.*, 298 F. Supp. 3d 1165, 1176 (N.D. Ill. 2018) (noting that to avoid estoppel, "an insurer need not be the one to have filed the action in which it seeks a declaration of no coverage").

Illinois courts have generally applied one of three standards to measure an insurer's promptness in requesting declaratory judgment. *L.A. Connection v. Penn-Am. Ins. Co.*, 843 N.E.2d 427, 432 (Ill. App. Ct. 2006); *Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 893 (N.D. Ill. 2018). One approach deems a declaratory judgment action timely requested "as long as it was filed before the underlying lawsuit ends," and another approach focuses on whether the insurer requested declaratory judgment before trial or settlement was imminent. *Id.* The third approach asks simply whether "the insurer filed the declaratory action within a reasonable amount of time after receiving notification of the underlying action." *Allied World Specialty Ins. Co. v. John Sexton Sand & Gravel Corp.*, 2019 IL App (1st) 182468-U, ¶ 66. Here, it is undisputed that the underlying suit remains ongoing, and there is nothing in the present record suggesting that trial or settlement is imminent. Thus, National Union clearly discharged its duty to act with reasonable promptness under the first two approaches.

Under the third approach, which is the one now favored by Illinois courts, the Court asks whether National Union requested declaratory judgment within a "reasonable time" of being on notice of the underlying suit, regardless of the posture of the underlying suit. *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*, 960, 846

N.E.2d 974, 987 (Ill. App. Ct. 2006); *see also Zurich Specialties London Ltd. v. Vill. of Bellwood*, No. 07 CV 2171, 2011 WL 248444, at *10 (N.D. Ill. Jan. 26, 2011) (noting that although the "Illinois Supreme Court has not yet decided the issue, this court agrees with those courts that have adopted the third approach"); *Sentinel*, 298 F. Supp. 3d at 1175 ("This Court agrees with these decisions . . . that the proper inquiry is whether Sentinel sought a declaratory judgment of no coverage within a reasonable time."). This Court finds that National Union did not unreasonably delay in requesting declaratory judgment. Illinois courts have not adopted a bright line rule as to what constitutes a "reasonable time." *Nat'l Cas. Co. v. S. Shore Iron Works, Inc.*, 341 F. Supp. 3d 884, 894 (N.D. Ill. 2018). In *South Shore Iron Works*, the district court found that a thirteen-month delay between an initial tender and filing a declaratory judgment action was reasonable because of the "protracted procedural history" of the underlying suit—including that it involved multiple amended complaints, one of which was filed just four months prior to the insurer's filing of a declaratory judgment action. 341 F. Supp. 3d at 894.

Similarly, there is protracted history here in the underlying case. And while "delays of *over a* year have been found unreasonable by courts employing the reasonable time test," *Zurich*, 2011 WL 248444, at *10 (emphasis added), the delay here between the time the Griffith Plaintiffs provided actual notice of the underlying suit and when National Union first requested a declaration of non-coverage was just about one year. Particularly given the complex nature of the underlying dispute (which involves hundreds of consolidated complaints) and the fact that the

underlying dispute is nowhere near completion nor settlement, this Court concludes that National Union sought declaratory relief within a reasonable time of receiving actual notice of the underlying suit. Therefore, this Court denies the Griffith Plaintiffs' motion as to estoppel, and grants National Union's motion as to estoppel.

## IV.    Conclusion

For the reasons explained above, this Court concludes that National Union owes Sterigenics and Griffith Labs a duty to defend the underlying fourth amended complaint and that National Union is not estopped from asserting coverage defenses. As a result, this Court grants Sterigenics' partial motion for judgment on the pleadings and denies National Union's cross-motion for judgment; and grants in part the Griffith Plaintiffs' partial motion for judgment on the pleadings, and grants in part National Union's cross-motion for judgment. This Court sets a telephonic status hearing for August 25, 2022 at 10:00 a.m. Parties shall call 866-434-5269; access code 3751971. Counsel shall be prepared to report on what substantive issues remain in this case, given that this Court has adjudicated National Union's defense obligations (at least with respect to the underlying fourth amended complaint), and questions regarding National Union's duty to indemnify are unripe and subject to dismissal pending the outcome of the underlying litigation. *See Am. Bankers*, 3 F.4th at 331.

E N T E R:

Dated: August 3, 2022

_____

MARY M. ROWLAND
United States District Judge

**RSA29**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sterigenics, U.S., LLC, | |
| Plaintiff, | Case No. 21-cv-4581 |
| v. | |
| National Union Fire Insurance Company Of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |
| Griffith Foods International, Inc., et al., | |
| Plaintiffs, | Case No. 21-cv-6403 |
| v. | |
| National Union Fire Insurance Company of Pittsburgh, P.A., | |
| | Judge Mary M. Rowland |
| Defendant. | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

In this insurance coverage dispute, Plaintiffs Griffith Foods International, Inc. and Griffith Foods Group, Inc. (collectively, "Griffith") and Plaintiff Sterigenics U.S., LLC brought separate but related lawsuits against their insurer, National Union Fire Insurance Company of Pittsburgh, P.A. related to an underlying action pending in Illinois state court. The underlying suit claims that individuals were harmed by

**RSA30**

exposure to discharges of ethylene oxide (EtO) from sterilization facilities in Willowbrook, Illinois. Previously, this Court granted Sterigenics' and the Griffith Plaintiffs' motions for judgment on the pleadings regarding the duty to defend, ruling that National Union owes Sterigenics and Griffith Labs a duty to defend the underlying state court complaint.

## I. Background

The following is a brief summary of the factual and procedural background in this case. This order otherwise presumes familiarity with the history of this case.

### A. Underlying Litigation and the Policies

In Illinois state court in the Circuit Court of Cook County, multiple plaintiffs sued several defendants, including two of the Plaintiffs here—Sterigenics and Griffith Food International, Inc., formerly known as Griffith Laboratories U.S.A., Inc. (hereinafter Griffith Labs). [Case No. 21-cv-4581, [15] ¶¶ 13, 16; 15-1].[1] *In re: Willowbrook Ethylene Oxide Litigation,* 18 L 10475. In the (operative) fourth amended complaint, the underlying plaintiffs allege that they suffered bodily and personal injuries as a result of exposure to discharges of ethylene oxide (EtO) from sterilization facilities Sterigenics currently owns in Willowbrook, Illinois. [15] ¶ 14. The fourth amended complaint serves as the master complaint for hundreds of actions which the state court consolidated for pretrial and discovery purposes. *Id.* ¶ 14 & n.2.

---

[1] Because Plaintiffs' complaints contain similar allegations, concern the same insurance policies, and the briefings contain largely similar arguments, this Court cites to the Sterigenics operative complaint (21-cv-4581 at Dkt. 15) for propositions that apply to both Plaintiffs and to the Sterigenics docket entries, unless the Court notes that it is referring to the Griffith docket. (21-cv-6403).

The underlying complaint asserts state-law claims against Sterigenics and Griffith Labs for negligence, negligent training, negligent supervision, willful and wanton conduct, strict liability, civil battery, and public nuisance. [15-1].

This dispute centers around two commercial general liability policies that National Union insures. [15] ¶ 17. Policy number GLA-945-70-58RA was effective from September 30, 1983 to September 30, 1984; policy number GLA-194-00-11RA was effective from September 30, 1984 to September 30, 1985. *Id.*

### B. National Union Denies Coverage

After National Union denied coverage to Sterigenics and the Griffith Plaintiffs, Sterigenics and the Griffith Plaintiffs brought separate suits against National Union in this Court. In its amended complaint, Sterigenics sought a judgment declaring that National Union has a duty to defend (Count I) and a duty to indemnify (Count II), as well as damages resulting from National Union's alleged breach of the Policies (Count III). [15] ¶¶ 57–82. The Griffith Plaintiffs asserted claims for breach of contract based on National Union's refusal to defend (Counts I and II); they also sought declaratory judgment ordering National Union to defend and indemnify and estopping National Union from asserting coverage defenses (Counts III and IV). Griffith [1] ¶¶ 49–78.

### C. This Court's Order and Subsequent Coverage Litigation

On August 3, 2022, this Court ruled that National Union owes Sterigenics and Griffith Labs a duty to defend based on the underlying fourth amended complaint. [40]. The Court also ruled that National Union was not estopped from asserting coverage defenses. *Id.* (hereafter, "Duty to Defend Order"). In light of the status of

the underlying action, however, the issue of indemnity was not ripe. In January and February 2023, Plaintiffs each moved to recover past defenses costs.

In January 2023, Griffith filed in state court an action against other insurers (not National Union) ((Cook Cnty. Cir. Ct. No. 2023-CH-00782, hereafter, "Illinois State Coverage Action"). In February 2023, another insurer, Zurich American Insurance Company, filed an action in the Superior Court of the State of Delaware (the "Delaware State Action"). *See* [Griffith, 69-2]. In May 2023, Sterigenics filed a petition to intervene in the Illinois State Coverage Action. *See* [96 at 4].

### D. Pending Motions

Now pending before this Court are multiple motions filed by National Union, the Griffith Plaintiffs, and Sterigenics. For the following reasons, National Union's motion for leave to file counterclaims [Griffith [32]], motion for leave to file a third-party complaint [Griffith [34]], and Rule 12(b)(7) motion to dismiss [Griffith [68]] are denied; the Griffith Plaintiffs' motion to dismiss the remaining non-duty to defend claims [Griffith [65]] is granted; and the Griffith Plaintiffs' motion for past defense costs [Griffith [59]] is granted as modified in their reply brief. Further, National Union's motion for leave to file counterclaims [42], motion for leave to file a third-party complaint [44], and National Union's motion to dismiss [71] are denied; Sterigenics' motion to dismiss the remaining non-duty to defend claims [86] is granted, and Sterigenics' motion for past defense costs [69] is granted as modified in its reply brief.

**RSA33**

## II.     Analysis

### A.     National Union's Motion for Leave to File Counterclaims

The Court begins with National Union's motion for leave to file counterclaims in both cases. In its proposed counterclaims, National Union seeks "to obtain declaratory relief from [the Griffith Plaintiffs and Sterigenics] relative to this Court's finding that National Union owes a duty to defend Griffith and Sterigenics U.S., LLC ('Sterigenics') against underlying litigation." [33-1 at 2; 43-1 at 2]. National Union's counterclaims seek a declaration, among other things, that the "Policies do not provide coverage to [Griffith and Sterigenics] for the Underlying Litigation." [33-1 at 18, 43-1 at 20].

It is well-established that under Rule 15, the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend is not automatically granted; instead it is in the court's discretion. *Crest Hill Land Dev., LLC v. City of Joliet*, 396 F.3d 801, 804 (7th Cir. 2005).

National Union argues that its proposed Counterclaims are compulsory under Rule 13(a) because they arise out of the same facts and subject matter as the complaints in this case and do not require adding another party. National Union contends that "there have been no coverage determinations outside of the Court's limited interlocutory ruling on the duty to defend, a decision subject to revision after the completion of discovery." [33 at 9; 43 at 9]. Plaintiffs respond that National Union must comply with this Court's Duty to Defend Order and its proposed counterclaims "are futile because they seek to relitigate issues this Court already decided for duty

to defend purposes and are untimely." [47 at 2].

First, the Court agrees with Plaintiffs that National Union cannot avoid the Duty to Defend Order via newly proposed counterclaims. While this Court did not rule on National Union's duty to indemnify because that issue was not ripe, it ruled that National Union owes Plaintiffs a duty to defend. It is well-settled under Illinois law that "[i]f the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). Illinois law is also clear that "an insured contracts for and has a right to expect two *separate and distinct duties* from an insurer: (1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of a covered risk." *Chandler v. Doherty*, 702 N.E.2d 634, 637 (4th Dist. 1998) (emphasis added); *see also Title Indus. Assurance Co., R.R.G. v. First Am. Title Ins. Co.*, 853 F.3d 876, 891 (7th Cir. 2017). As the court in *Tokio Marine Specialty Ins. Co. v. Altom Transp., Inc.*, No. 20 C 7006, 2021 WL 1962403 (N.D. Ill. May 17, 2021) explained, "[t]he question of whether an insurer must indemnify is not ripe until the underlying litigation ends [while] the duty to defend [] depends on reading the underlying complaint and can thus be determined on the pleadings." *Id.* at *4.

In its Duty to Defend Order this Court expressly stated that it had "adjudicated National Union's defense obligations" with respect to the underlying master complaint [40], so National Union "*must* defend an action even though it may not ultimately be obligated to indemnify the insured." *Illinois Mun. League Risk Mgmt.*

*Ass'n v. City of Genoa*, 51 N.E.3d 1133, 1136 (2016) (emphasis added); *see also Am. Serv. Ins. Co. v. China Ocean Shipping Co. (Americas) Inc.*, 2014 IL App (1st) 121895, ¶ 19, 7 N.E.3d 161, 170 (holding that plaintiff owed defendants a duty to defend was the law of the case). National Union did not and does not challenge the Duty to Defend Order through a request for appeal or reconsideration motion.

Next, as Plaintiffs point out, Rule 13(a) requires that "a pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party…." Fed. R. Civ. P. 13(a). The Court is not persuaded by National Union's argument that "the Counterclaims did not become relevant until the Court determined that the Fourth Amended Master Complaint potentially implicated a duty to defend as a threshold matter." [Griffith, 51 at 4]. In November 2021 and January 2022, National Union filed answers in these cases, asserting in its affirmative defenses that, among other things, "the Policies do not provide coverage to an Insured for damages sought in [the Underlying Litigation] that are not damages because of 'bodily injury'"; "the Pollution Exclusions preclude coverage for the damages sought in the Underlying Litigation"; and each Plaintiff failed to establish it qualified as a Named Insured. [19; Griffith [11]]. Although National Union maintains that its proposed counterclaims did not "become relevant" until this Court's Duty to Defend Order in August 2022, National Union raised the same issues in its affirmative defenses in late 2021 and early 2022. *See id*. and [43, Griffith [33]].

National Union relies on *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343 (7th Cir. 2015) to argue that this Court should grant it leave to amend. But *Life*

*Plans* was decided at a different procedural posture, and the plaintiff there sought amendment "promptly after discovering a factual basis for its new claims." *Id.* at 358. This case does not involve a defendant discovering new facts, prompting new claims.[2] This is not a situation where the counterclaim matured only after National Union served its answer. *See Burlington N. R.R. Co. v. Strong*, 907 F.2d 707, 710 (7th Cir. 1990).

National Union also contends that this Court did not decide whether Sterigenics is not a "named insured" under the Policies. [43 at 5, 9]. But the Court concluded that Sterigenics is a "named insured" for the purposes of National Union's duty to defend. [40 at 9]. Finally, National Union argues that "[t]he Master Complaint forms only a portion of the operative factual allegations in some of the lawsuits in the Underlying Litigation. [It] does not operate as a complete pleading in any underlying lawsuit." [51 at 3]. This Court determined the duty to defend based on the underlying Fourth Amended Master Complaint. That was the subject of the parties' dispute before this Court.[3] Moreover, National Union raised this argument for the first time in its reply briefs. *See* [58]; Griffith, [51]. *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) ("arguments raised for the first time in a reply brief are waived.")

---

[2] National Union also argues that it is "seek[ing] discovery" on the Policies' pollution exclusion and personal injury coverage. [Griffith, 33 at 5]. But this Court determined duty to defend, as required in Illinois, by "compar[ing] the allegations in the underlying complaint to the policy language in order to determine whether the insurer's duty to defend has arisen." *Gen. Agents Ins. Co. of Am.*, 828 N.E.2d at 1098.

[3] In the prior briefing, National Union discussed the Underlying Suits as a single "Underlying Litigation" and did not assert that the master complaint was not a "complete pleading" or distinguish between underlying claimants. *See* [24].

**RSA37**

For these reasons, National Union's motions for leave to file counterclaims [32], [42] are denied.

### B.     National Union's Rule 12(b)(7) Motions to Dismiss

The Court next addresses National Union's motion to dismiss Griffith's Complaint and Sterigenics's Amended Complaint pursuant to Rule 12(b)(7). According to National Union, both lawsuits lack all necessary parties. National Union says that in Griffith's Illinois State Coverage Action Griffith seeks insurance coverage from at least eleven insurance carriers under more than 70 insurance policies in effect between 1983 to 2019 for the same underlying torts Griffith seeks coverage from National Union in this proceeding (National Union issued two of the 72 policies at issue).

Under Rule 12(b)(7), a party may seek to dismiss a lawsuit for failure to join a party under Rule 19. Rule 19(a)(1) provides that a party "must be joined" if (1) without that person, the court cannot provide "complete relief among existing parties"; (2) the person claims an interest in the action and proceeding with the case without that person may "impair or impede the person's ability to protect the interest" or leave an "existing party" subject to "inconsistent obligations." Fed. R. Civ. P. 19(a)(1)). "The purpose of Rule 19 under the Federal Rules of Civil Procedure is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Davis Companies v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001) (quotation omitted). However, dismissal "is not the preferred outcome," *Ochs v. Hindman*, 984 F. Supp.

2d 903, 908 (N.D. Ill. 2013) and the movant "bears the burden of demonstrating that the absent party is a necessary and indispensable party that must be joined." *Id*. at 906.

National Union argues that the existence of other primary insurers means that this suit should be dismissed because "the scope of coverage provided by the Absent Insurers are necessary to determine proper trigger and allocation issues presented by Plaintiffs' claims, including defense damage claims." [Griffith, 69 at 9]. To support its position, National Union relies on *Sta-Rite Industries, Inc. v. Allstate Ins. Co.*, 96 F.3d 281 (7th Cir. 1996). *Sta-Rite* is distinguishable on a number of grounds, however. It involved a parallel state court proceeding in Wisconsin. 96 F.3d at 283. The *Sta-Rite* plaintiffs sued a number of insurers in federal court and the *same day* sued another insurer in state court alleging the same claims. *Id*. Here, Sterigenics filed its suit in August 2021 and Griffith filed in November 2021. Griffith filed the state court action in January 2023. The Seventh Circuit in *Sta-Rite* concluded that the district court's dismissal under Rule 12(b)(7) was correct because of the risk of duplicative litigation given the parallel state court action and "issues of first impression under Wisconsin insurance law." 96 F.3d at 285. *See CXA Corp. v. Am. Fam. Ins. Co.*, No. 15 CV 11412, 2016 WL 6582577, at *4 (N.D. Ill. Nov. 7, 2016) (distinguishing *Sta-Rite* in part because it was based on Wisconsin substantive law). And importantly, unlike here, in *Sta-Rite*, there was no duty to

defend ruling. To the contrary in *Sta-Rite* the only progress in federal court had been the exchange of mandatory discovery. *Id.* at 287.[4]

Plaintiffs counter that National Union's duty to defend under the Policies was "triggered…regardless of whether National Union may have rights to later seek contribution from other insurers *after* it has paid Griffith's defense costs." [Griffith, 83 at 2]. For its part, National Union is concerned about potential inconsistent rulings, but courts have addressed this concern before. *See Tokio Marine Specialty Ins. Co.*, 2021 WL 1962403, at *3 ("to the extent there is some risk of an inconsistent judgment, a future contribution action would remedy that concern.") (citing *Rhone–Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995)).

Plaintiffs also argue that Rule 19(a)'s requirements are not met because this Court can accord "complete relief among existing parties." [73 at 7]. *See First Pros. Ins. Co. v. Florendo*, No. 11-CV-197-DRH, 2011 WL 5325710, at *4 (S.D. Ill. Nov. 3, 2011) ("[T]he term 'complete relief' refers only to 'relief between the persons already parties, and not as between a party and the absent person whose joinder is sought.'") (quoting *Davis Companies*, 268 F.3d at 484). National Union does not directly address this argument other than to argue that this Court could resolve the coverage dispute "in a single, complete action, with all insurers present." [76 at 6]. However this Court determined the rights and duties of the parties in this case as it relates to duty to defend the underlying master complaint. And for the reasons explained further below, the Court will grant Plaintiffs' motions to voluntarily

---

[4] Moreover, the Seventh Circuit ultimately affirmed on an alternative ground, lack of subject matter jurisdiction, that became evident on appeal. 96 F.3d 281.

**RSA40**

dismiss the non-duty-to-defend claims. Thus the Court finds that National Union has not met its burden to show that dismissal under Rule 12(b)(7) is warranted. Therefore National Union's Rule 12(b)(7) motions to dismiss [68] [71] are denied.

### C. National Union's Motions to File a Third-Party Complaint

In the alternative to dismissal under Rule 12(b)(7), National Union requests that the Court grant its motion for leave to file its third party complaint under Rule 14 so it can implead the Absent Insurers as third-party defendants. [Griffith, 69 at 12]. It argues that it has a "valid contribution action" against Zurich and other insurers, and seeks a declaration that this Court's Duty to Defend Order applies equally to Zurich and other insurers. [45 at 2, 6].

Equitable contribution "as it pertains to insurance law is an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004). National Union recently reiterated that it seeks to implead other insurers "for purposes of obtaining contribution predicated on this Court's duty to defend ruling." [96 at 2]. Notably, National Union does not contend that it cannot bring a separate contribution action against Absent Insurers.

In its motion to dismiss, National Union argued that "Griffith's joinder of the other primary insurers would destroy diversity jurisdiction" [69 at 2]. Anticipating this issue as it relates to its Rule 14 motion, National Union stated on the other hand that its "motion to implead the other insurers will not destroy diversity jurisdiction

because the Court has supplemental jurisdiction over the third-party claim pursuant to 28 U.S.C. § 1367(a)." *Id.* n. 1. National Union does not cite authority for this proposition. And the language of the statute, 28 U.S.C. § 1367(b) and the case law compels a different result. *See* 28 U.S.C. § 1367(b) (explaining limits on supplemental jurisdiction under subsection (a)); *see also Stromberg Metal Works, Inc. v. Press Mech., Inc.,* 77 F.3d 928, 932 (7th Cir. 1996); *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 387-89 (1998).[5]

Even if jurisdiction were secure, for the reasons explained more fully below related to Plaintiffs' motion for voluntary dismissal, the Court finds that permitting National Union to implead Absent Insurers at this stage is not warranted. Therefore, National Union's motions for leave to file a third-party complaint [34], [44] are denied.

### D. Plaintiffs' motions to dismiss the remaining non-duty to defend claims

Plaintiffs move under Rule 41(a)(2) to voluntarily dismiss without prejudice their non-duty to defend claims. Under Fed. R. Civ. P. 41(a)(2), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." A district court has discretion to allow a motion to dismiss under Rule 41(a)(2). *Stern v. Barnett*, 452 F.2d 211, 213 (7th Cir. 1971). Dismissal "should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit." *Id.* It is defendant's burden to show "plain legal prejudice" would result from the dismissal. *See Simons v. Fox*, 725 F. App'x 402, 406

---

[5] The Court has an independent obligation to ensure the existence of federal subject matter jurisdiction. *See Smith v. Am. Gen. Life & Acc. Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003); *Craig v. Ont. Corp.*, 543 F.3d 872, 875 (7th Cir. 2008).

**RSA42**

(7th Cir. 2018).

To narrow the issues and facilitate judicial economy, Griffith now "seeks to voluntarily dismiss all outstanding claims not decided in the Duty to Defend Order or sought as ancillary relief (defense costs) thereto, namely, Counts I and II (breach of contract) of its Complaint, and the portion of Counts III and IV (declaratory judgment) relating to National Union's duty to indemnify." [65 at 4]. Sterigenics similarly moved to voluntarily dismiss its declaratory judgment claim addressing the duty to indemnify (Count II) and breach of contract claim (Count III) [86]. Plaintiffs argue that National Union will not be prejudiced by the voluntary dismissal of all remaining claims since the Court already decided that it owes Griffith a duty to defend, and dismissing the remaining claims allows the Court and parties to reach the damages claims and conclude this action.

National Union responds that Plaintiffs delayed in seeking dismissal of these claims, Plaintiffs' attempt to separate duty to defend and duty to indemnify claims is improper claim splitting, and dismissal of the claims could prejudice National Union if the state court applies differing interpretations to, for example, the pollution exclusion, which could prevent National Union from seeking contribution from Griffith's other insurers.

First, as discussed, treating the duty to defend and duty to indemnify separately is well-established under Illinois law. *See Gen. Agents Ins. Co. of Am.,* 828 N.E.2d at 1098. Further, this Court's Duty to Defend Order did not address contribution nor could it have. *See Greenwich Ins. Co. v. John Sexton Sand & Gravel Corp.,* 2016 IL

App (1st) 151606-U, P42 (issue of contribution was "a different issue that could not have been raised until the determination of the Insurers' duty to defend."). With the duty to defend claim decided, equitable contribution then "permits an insurer who has paid for an entire loss to be reimbursed by other insurers who are also liable for the loss, and it is applied where one insurer has paid a debt equally owed by other insurers." *Employers Ins. of Wausau v. James McHugh Constr., Co.*, 144 F.3d 1097, 1107 (7th Cir. 1998) (citation omitted).

The cases cited by National Union for the proposition that Plaintiffs are engaged in improper claim splitting are not persuasive. *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986 (Ill. App. Ct. 2009), *Elmhurst Lincon-Mercury, Inc. Emps. 401(k) Profit Sharing Plan & Tr. v. Mears*, 215 F. Supp. 3d 659 (N.D. Ill. 2016), *Baird & Warner, Inc. v. Addison Indus. Park, Inc.*, 387 N.E.2d 831 (1st Dist. 1979) [96 at 6], were, respectively, a negligent design case, involved a brokerage contract, and an ERISA suit. They did not discuss an insurer's duties to defend and indemnify. On the other hand, courts have explained that "[a] victim of wrongdoing is not generally required to sue all the wrongdoers...." *Varlen Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, No. 09-CV-7915, 2011 WL 3664796, at *4 (N.D. Ill. Aug. 17, 2011) (quoting *Rhone–Poulenc Inc.*, 71 F.3d at 1301). So in the case of "multiple, overlapping coverage the insurers who are not sued will not be bound by determinations made in a suit to which they are not parties, and the insurers who are sued can if they lose seek contribution afterward from the others." *Id.*

According to National Union, it will be prejudiced by being prevented from

adjudicating "the allocation of Sterigenics' defense and potential indemnity in a consistent fashion in this forum" and it could be prevented from seeking contribution from other insurers. [96 at 7; 70 at 6]. But National Union does not cite any authority that this Court's Duty to Defend Order will bar it from seeking contribution from other insurers in another action. *Cf. Varlen Corp.*, 2011 WL 3664796, at *4. ("In a case of multiple, overlapping coverage the insurers who are not sued will not be bound by determinations made in a suit to which they are not parties, and the insurers who are sued can if they lose seek contribution afterward from the others."). Although excessive delay is one factor for the Court to consider (*Pace v. S. Exp. Co.*, 409 F.2d 331 (7th Cir. 1969)), the Court does not find that Plaintiffs excessively delayed in moving to voluntarily dismiss certain claims.[6] And National Union has not shown it will suffer "plain legal prejudice."

This is a complex and protracted suit, both in the underlying case and the insurance coverage actions. As often happens, multiple coverage suits have emerged. National Union says it is litigating coverage for these claims in three separate actions. [96 at 5]. Considering the posture of the case before this Court, the multiple coverage disputes, and the stage of the Illinois State Coverage Action, the Court finds that continued litigation in this Court would not serve the parties or facilitate judicial efficiency. Finally, the Court does not agree with National Union that dismissal should be with prejudice. *See Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 332 (7th Cir. 2021) (dismissal without prejudice of indemnity claim).

---

[6] *Pace*, 409 F.2d 331, cited by National Union, involved an automobile accident; it was not an insurance coverage case.

Accordingly, the Court in its discretion concludes that dismissal of Plaintiff's non duty-to-defend claims is warranted. Plaintiffs' motions for voluntary dismissal [65] [86] of the remaining non duty to defend claims are granted.

### E. Griffith's Motion for Past Defense Costs

The Court now turns to Plaintiffs' motions for past defense costs. District courts "have wide discretion in determining the appropriate amount of attorneys' fees and costs." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Under *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), where "there are market incentives [for the party seeking fees] to economize, there is no occasion for painstaking judicial review." *Id.* at 1076. *See also USA Gymnastics v. Liberty Ins. Underwriters, Inc.*, 46 F.4th 571, 581 (7th Cir. 2022) ("The market-tested presumption applies when, following an insurer's breach of the duty to defend, a policyholder has supervised and *incurred* legal fees without any expectation of payment by the insurer."). Further, under Illinois law, if a lawsuit "pleads several theories of recovery, even if only one theory falls within the insurance policy's coverages, the insurer owes a duty to defend the entire lawsuit." *Farmers Auto. Ins. Ass'n v. Neumann*, 2015 IL App (3d) 140026, ¶ 11, 28 N.E.3d 830, 834 (2015); *see also Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1015 n. 2 (2010).

Griffith requests that this Court enforce its Duty to Defend Order against National Union by awarding Griffith past defense costs for the Underlying Suits. Griffith moves for a judgment for past defense costs from January 29, 2021 through August 31, 2022. In its reply brief, Griffith reduced the total amount it seeks to

$16,017,702.62. In support of its request for defense costs, Griffith submitted sworn Declarations of its General Counsel David Kim. [Griffith [59], Exh. A ("Kim Declaration"); 80]. Kim is familiar with and reviewed the legal expenses Griffith incurred in defending the Underlying Suits. [59 at 7]. Griffith attaches invoices, checks and ACH receipts, as well as a summary spreadsheet of the defense invoices, amounts written-off, amounts paid to date, and sum of amounts remaining to be paid. *Id*. at 8. Kim attests that he believes these legal expenses to be reasonable in light of the allegations and magnitude of the Underlying Suits. (Kim Declaration, ¶ 16).

Griffith argues that under *Taco Bell Corp*. 388 F.3d 1069, this Court need not scrutinize its defense costs because where "there are market incentives [for the party seeking fees] to economize, there is no occasion for painstaking judicial review." *Id*. at 1076. National Union counters that *Taco Bell*'s presumption of reasonableness applies only to covered claims. However National Union's objections to the defense costs motions largely seek to relitigate the Duty to Defend Order. As explained, the duty to defend applies to the entire lawsuit (*Farmers Auto. Ins. Ass'n*, 28 N.E.3d 830; *Pekin Ins. Co.*, 930 N.E.2d 1011), and National Union may seek contribution separately. In light of this Court's Duty to Defend Order, National Union cannot delay paying defense costs. *See Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092 (Ill. 2005).

National Union also objects to certain of Griffith's costs for clerical or data entry or management work, as well as some vague entries. However generally the Court is not required to "scrutin[ize] [] line-item entries". *Metavante Corp. v. Emigrant Sav.*

*Bank*, 619 F.3d 748, 774 (7th Cir. 2010). And National Union does not make any specific objections to attorney hourly rates. Finally, National Union contends that Griffith has not paid 100% of the defense costs. But as Griffith points out, the Seventh Circuit recently clarified that "payment in full is not a requirement for the presumption of reasonableness to apply." *USA Gymnastics,* 46 F.4th at 581.

Therefore, this Court grants in large part Griffith's motion for past defense costs.

### F. Sterigenics' Motion for Past Defense Costs

Sterigenics requests that this Court enforce its Duty to Defend Order against National Union by awarding Sterigenics past defense costs incurred from February 1, 2021 to September 30, 2022 for the Underlying Litigation. In its reply brief Sterigenics requests an adjusted total amount of $75,502,938.25.

Sterigenics submits sworn declarations of Assistant General Counsel Martha Stevens Sullivan. [69-1; 94-1]. Sullivan is the Assistant General Counsel to Sotera Health Company, providing shared legal services to all parts of Sotera Health, including Sterigenics U.S., LLC. [69-1 at ¶ 2]. She attests that Sterigenics incurred over $75 million in approved defense fees, costs, and other expenses in connection with the Underlying Litigation. *Id*. ¶ 4. She further attests that these expenses are correct and have been necessarily incurred in defending the underlying litigation, and were not out of proportion to the stakes in the underlying litigation. *Id*. ¶¶ 5, 8.

National Union's response, similar to its response to the Griffith motion, largely seeks to relitigate the Duty to Defend Order. National Union objects arguing Sterigenics' motion is supported by insufficient documentation, but Sterigenics points

**RSA48**

out its motion was supported by documentation showing paid or soon-to-be paid amounts vendor-by-vendor and invoice-by-invoice, and Sterigenics submitted further supporting documentation attached its reply. *See* [67, 92, 94-1]. Sullivan also specified cost-saving measures: "Sterigenics negotiated discounts on certain fees, including discounted hourly rates and alternate fee agreements with outside counsel, discounted rates with other service providers, cost-sharing with other parties where appropriate, and engaged lower-cost providers where appropriate." [69-1 at ¶ 6]. National Union also objects to invoices to Sotera, Sterigenics' holding company. However Sterigenics' reply and supplemental declaration affirm that all the Reimbursable Expenses were incurred and paid by Sterigenics. [94-1 ¶ 4].

The Court finds that Sterigenics submitted sworn declarations and supporting documentation sufficient for the presumption of reasonableness to apply. *See Taco Bell Corp.* 388 F.3d 1069; *USA Gymnastics*, 46 F.4th 571. Therefore, this Court grants in large part Sterigenics' motion for past defense costs.

## IV.   Conclusion

For the reasons explained above, in Griffith, 21-cv-06403, National Union's motion for leave to file counterclaims [32], motion for leave to file a third-party complaint [34], and Rule 12(b)(7) motion to dismiss [68] are denied; the Griffith Plaintiffs' motion to dismiss the remaining non-duty to defend claims [65] is granted; and the Griffith Plaintiffs' motion for past defense costs [59] is granted as modified in their reply brief. Further, in Sterigenics, 21-cv-04581, National Union's motion for leave to file counterclaims [42], motion for leave to file a third-party complaint [44], and

**RSA49**

National Union's motion to dismiss [71] are denied; Sterigenics' motion to dismiss the remaining non-duty to defend claims [86] is granted, and Sterigenics' motion for past defense costs [69] is granted as modified in its reply brief.

The Court has declared that National Union owes Griffith and Sterigenics a duty to defend the underlying fourth amended complaint and owes Griffith $16,017,702.62 in past defense costs and owes Sterigenics $75,502,938.25 in past defense costs. The Clerk is directed to enter judgment accordingly. Civil case terminated.

E N T E R:

Dated: July 25, 2023

_____
MARY M. ROWLAND
United States District Judge

**RSA50**

ILND 450 (Rev. 10/13) Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Sterigenics U.S., LLC,

Plaintiff,

v.

National Union Fire Insurance Company of
Pittsburgh, PA,

Defendant.

Case No. 21-cv-04581
Judge Mary M. Rowland

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

which ☐ includes    pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: in favor of plaintiff Sterigenics U.S., LLC and against defendant National Union Fire Insurance Company of Pittsburgh, PA. Plaintiff shall recover $75,502,938.25 in past defense costs from Defendant.

---

This action was *(check one)*:

☐ tried by a jury with Judge Mary M. Rowland presiding, and the jury has rendered a verdict.
☐ tried by Judge Mary M. Rowland without a jury and the above decision was reached.
☒ decided by Judge Mary M. Rowland on a motion for costs.

Date: 7/25/2023             Thomas G. Bruton, Clerk of Court
                                            Dawn A. Moreno, Deputy Clerk

**RSA51**

ILND 450 (Rev. 10/13) Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

Griffith Foods International, Inc., et al,

Plaintiffs,

v.

National Union Fire Insurance Company of
Pittsburgh, PA,

Defendant.

Case No.  21-cv-6403
Judge Mary M. Rowland

## <u>JUDGMENT IN A CIVIL CASE</u>

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)
and against defendant(s)
in the amount of $    ,

which ☐ includes    pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)
and against plaintiff(s)

.

Defendant(s) shall recover costs from plaintiff(s).

---

☒    other: in favor of plaintiffs Griffith Foods International, Inc. and Griffith Foods Group, Inc. and against defendant National Union Fire Insurance Company of Pittsburgh, PA. Plaintiffs shall recover $16,017,702.62 in past defense costs from Defendant.

---

This action was *(check one)*:

☐ tried by a jury with Judge Mary M. Rowland presiding, and the jury has rendered a verdict.
☐ tried by Judge Mary M. Rowland without a jury and the above decision was reached.
☒ decided by Judge Mary M. Rowland on a motion for costs.

Date:  7/25/2023          Thomas G. Bruton, Clerk of Court
                                        Dawn A. Moreno, Deputy Clerk

**RSA52**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

STERIGENICS U.S., LLC,

                Plaintiff,

     v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,

                Defendant.

No. 1:21-cv-04581

Honorable Mary M. Rowland

**AMENDED JUDGMENT ENTRY**

This matter coming to be heard on presentment of Plaintiff, Sterigenics U.S., LLC's ("Sterigenics") Motions for Additional Defense Costs and Prejudgment and Postjudgment Interest [Dkt. Nos. 116 & 103], and the briefing of the parties, due notice having been given, the Court being fully advised in the premises, the Court amends its July 25, 2023 Judgment [Dkt. No. 100] as follows:

    1.      Consistent with the Court's August 3, 2022 Memorandum Opinion and Order [Dkt. No. 40] and the Minute Entry confirming that Order [Dkt. No. 39], the Court enters judgment for Sterigenics and against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") on Sterigenics' claim for declaratory judgment as to National Union's duty to defend Sterigenics in the underlying litigation (Count I of Sterigenics' First Amended Complaint, *see* Dkt. No. 15).  The Court declared that National Union owes Sterigenics a duty to defend the fourth amended complaint and that National Union is not estopped from asserting coverage defenses.

    2.      Consistent with the reasoning stated in the Court's July 25, 2023 Memorandum Opinion and Order that found National Union owed Sterigenics $75,502,938.25 of past defense

**RSA53**

costs [Dkt. No. 98], the Court grants Sterigenics' Motion for Additional Defense Costs [Dkt. No. 116].

3.    The Court also grants Sterigenics' Motion for Prejudgment and Postjudgment Interest on the July 25, 2023 Judgment [Dkt. No. 103].

4.    In so doing, the Court holds that: (i) Sterigenics is entitled to the additional past defense costs in the amount of $26,170,910.89; and (ii) Sterigenics is entitled to prejudgment interest on the defense cost invoices at issue in Sterigenics' Motions for Past Defense Costs and for Additional Defense Costs [Dkt. Nos. 69 & 116] (collectively, the "Defense Costs Motions") from the date of payment until January 11, 2024 in the amount of $8,568,938.87.

5.    The Court, accordingly, declares that Sterigenics shall recover from National Union: (i) the principal amount of $101,673,849.14; plus (ii) an additional $8,568,938.87 in prejudgment interest, which includes prejudgment interest at the rate of 5% per annum running from the date each defense cost invoice at issue in the Defense Costs Motions was paid until January 11, 2024; plus (iii) postjudgment interest on both the principal amount stated in paragraph 4(i) and the prejudgment interest amount stated in paragraph 4(ii) at the rate of 4.825% per annum from January 11, 2024 until paid in full, along with costs.

Dated: January 11, 2024

REVIEWED, APPROVED, AND
ENTERED BY:

_____
Honorable Mary M. Rowland
United States District Judge

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GRIFFITH FOODS INTERNATIONAL INC. F/K/A GRIFFITH LABORATORIES U.S.A., INC., AND GRIFFITH FOODS GROUP INC. F/K/A GRIFFITH LABORATORIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., <br><br> Defendant. | No. 1:21-cv-6403 <br><br> Honorable Mary M. Rowland |

**AMENDED JUDGMENT ENTRY**

This matter coming to be heard on presentation of Plaintiffs Griffith Foods International Inc. f/k/a Griffith Laboratories U.S.A., Inc. and Griffith Foods Group Inc. f/k/a Griffith Laboratories, Inc.'s (collectively, "Griffith") Second and Final Motion for Defense Costs and Interest [Dkt. No. 92] and the briefing of the parties, due notice having been given, the Court being fully advised in the premises, the Court amends its July 25, 2023 Judgment [Dkt. No. 89] as follows:

1.      Consistent with the Court's August 3, 2022 Memorandum Opinion and Order [Dkt. No. 30] and the Minute Entry confirming its Order [Dkt. No. 29], the Court enters judgment for Griffith and against Defendant National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") on Griffith's claim for declaratory judgment as to National Union's duty to defend against the underlying litigation [Count III and IV of Griffith's Complaint, see Dkt. No. 1]. The Court declared that National Union owes Griffith a duty to defend the fourth amended complaint and that National Union is not estopped from asserting coverage defenses.

**RSA55**

2.      Consistent with the reasoning stated in the Court's July 25, 2023 Memorandum Opinion and Order that found National Union owed Griffith $16,017,702.62 of past defense costs [Dkt. No. 89], the Court grants Griffith's Second and Final Motion for Defense Costs and Interest [Dkt. No. 92]. In so doing, the Court holds that: (i) Griffith is entitled to additional past defense costs incurred from September 1, 2022 to July 31, 2023 in the amount of $6,224,117.73; and (ii) Griffith is entitled to pre-judgment interest on all paid amounts from the date of payment until January 11, 2024 in the amount of $1,086,943.

3.      The Court, accordingly, declares that National Union owes Griffith the following amounts: (i) the principal amount of $22,241,820.35; plus (ii) an additional $1,086,943 in prejudgment interest, which includes prejudgment interest at the rate of 5% per annum running from the date of payment of each defense cost invoice as explained in the Second and Final Motion for Defense Costs and Interest until January 11, 2024; plus (iii) post-judgment interest on both the principal amount stated in paragraph 3(i) and the prejudgment interest amount stated in paragraph 3(ii) at the rate of 4.825% per annum from January 11, 2024 until paid in full, along with costs.

Dated: January 11, 2024

REVIEWED, APPROVED, AND
ENTERED BY:

_____
Honorable Mary M. Rowland
United States District Judge

- 2 -

**RSA56**

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 11, 2024, an electronic copy of the Required Short Appendix was served on all counsel of record via CM/ECF.

        /s/ *Thomas H. Dupree Jr.*

Thomas H. Dupree Jr.
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036